THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LORI E. UPTON, Defendant-Appellant.

Fifth District   No. 5—84—0632

Opinion filed January 29, 1987.

William G. Schwartz, of Hunter & Schwartz, and Robert S. White, law student, both of Carbondale, for appellant.

John R. Clemons, State's Attorney, of Murphysboro (Kenneth R. Boyle, Stephen E. Norris, and Vito A. Mastrangelo, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

This cause is before us on remand from the Illinois Supreme Court, reversing our earlier decision holding unconstitutional section 404 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1983, ch. 56½, par. 1404). The mandate of the supreme court directs us to consider assignments of error not addressed in our earlier disposition because of our disposition of the cause solely on the constitutional issue.

The additional issues raised involve the prosecution's instructions

Nos. 10 and 23A, claimed to be misleading and inaccurate in defining a "look-alike" substance, and the refusal of the court to instruct the jury on the defense of entrapment.

On two occasions, November 16 and 20, 1982, Agent Donna Bandy of the Southern Illinois Enforcement Group purchased "bootleg bikers," noncontrolled substances, from the defendant. The meetings between defendant and Agent Bandy were arranged by Raymond Rinn, who had been charged with conspiracy to distribute a controlled substance. In order to avoid prosecution, Rinn agreed to bring into contact three suspected drug sellers with agents of the Southern Illinois Enforcement Group. One of the individuals selected by Rinn was defendant, not a friend, but an acquaintance with whom Rinn had smoked cannabis. He did not know from his prior experience with her that she was a seller of drugs, although he had a vague recollection that she offered to sell him some controlled substance, not specified, at some prior time. According to Bandy's testimony, on November 16 the tablets were sold to her as "ludes" or "quaaludes," a schedule I controlled substance, methaqualone (Ill. Rev. Stat. 1983, ch. 56½, par. 1204(e)(2)), with the marking "Lemmon 714" imprinted on them, a customary marking for that controlled substance. Bandy testified that defendant referred to the tablets as good quality "bootleg bikers." Bandy further testified that the sale took place in defendant's room in Kellogg Hall and that she paid the usual and customary price for the tablets that one would pay for the controlled substance they were represented to be. Defendant said she would get 200 more tablets over the Thanksgiving break as well as "speed." On November 30, 1982, Rinn called Bandy and told her that defendant wanted to see her as she had more quaaludes. Six tablets were sold to Bandy in the same dormitory room in Kellogg Hall on that occasion. Defendant asked for and Bandy gave defendant her telephone number.

Subsequently, on December 8, 1982, Agent Burke, in the presence of Agent Bandy, purchased 100 purple tablets from defendant that defendant described as "purple crosses." The agent testified that she referred to the tablets at the time of sale as "speed," a controlled substance, amphetamine. (Ill. Rev. Stat. 1983, ch. 56½, par. 1206(d)(1).) When asked what type of "speed," defendant said the tablets were "purple crosses."

None of the tablets were controlled substances. At trial, defendant testified that she did not take drugs or smoke cannabis with Rinn, that she knew the substances sold were noncontrolled substances, and that she referred to the substances as "bootleg bikers," a mild sleeping pill, and "purple crosses," a tablet, like "No-Doz," containing caf-

feine. Some of these tablets could be purchased mail-order through a magazine, *High Times,* although she got them from another person. The difference between a "bootleg biker" and a quaalude is that the word "Lemmon" is spelled differently. Notwithstanding her testimony, over her objection the court gave the prosecution's instruction No. 10, a non-IPI (Illinois Pattern Jury Instruction) instruction taken from section 404(d) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1983, ch. 56½, par. 1404(d)) which told the jury that "[i]t is not a defense to the charge of unlawful distribution of a look-alike substance that the defendant believed the look-alike substance actually to be a controlled substance."

Defendant argues that it was prejudicial error to give this instruction as it interjected a nonissue into the case and implied that she believed the substances sold to be controlled substances. She argues that the jury would necessarily be confused as to how this instruction fit into the evidence presented. The error was compounded, defendant argues, by the prosecution's closing argument that defendant was a source of drugs on the campus at Southern Illinois University.

We disagree with defendant's assertion that the evidence establishes that she knew or believed that the substances sold were noncontrolled substances. While defendant assumes the record would establish that "bootleg bikers" and "purple crosses" are recognized street names for noncontrolled substances, nothing in the evidence suggests just what these terms mean. These expressions could well be street names for methaqualone and amphetamines, controlled substances. Furthermore, while defendant argues that the evidence establishes that she knew the substances sold were noncontrolled substances, the defendant testified she obtained the tablets from someone "uptown" who played in a band. We agree with the trial court's observation at the instruction conference that the evidence would establish that a question was raised as to what the defendant believed she was selling at the time, even though she testified that she knew the substances sold were noncontrolled substances. While the instruction was a non-IPI instruction, it was an accurate statement of the law applicable to the case.

For these reasons the instruction would properly clarify for the jury that it was not an element in the prosecution's case to prove that defendant believed the tablets to be noncontrolled substances; that what she believed the substances to be was of no import. Rather than confuse the jury, we believe the instruction would clarify this matter for the jury. In any event, the giving of the instruction would be harmless error at most as the giving of the instruction could not

conceivably confuse the jury in view of the other instructions which set forth the elements the State must prove. The prosecution emphasized throughout the trial that defendant's belief as to the nature of the substances sold was of no consequence.

It would appear that the instructions defining the offenses placed a greater burden on the prosecution than did the statute defining the offense. The instructions told the jury that the offense of distributing a look-alike substance was committed when the defendant knowingly distributes any substance which the defendant represented to be a controlled substance, here methaqualone and amphetamines.

This instruction would have been accurate prior to the 1982 amendment of section 404. In 1981, section 404 of the Controlled Substances Act provided:

"[I]t is unlawful for any person knowingly to deliver *** any substance which he represents to be a controlled substance." Ill. Rev. Stat. 1981, ch. 56½, par. 1404.

Public Act 82—768 amended section 404, effective September 7, 1982, so that at the time the instant offenses were committed, section 404 provided:

"[I]t is unlawful for any person knowingly to distribute *** a look-alike substance." Ill. Rev. Stat., 1982 Supp., ch. 56½, par. 1404, eff. Sept. 7, 1982.

The defendant need not represent the substance to be a controlled substance according to the definition of look-alike substance in section 102 of the Act (Ill. Rev. Stat., 1982 Supp., ch. 56½, par. 1102(z), eff. Sept. 7, 1982.) People's instruction No. 23A, assigned as error by defendant, was in the wording of section 102(z) and told the jury:

"Look-alike substances' means a substance, other than a controlled substance which (1) by overall dosage unit, appearance, including shape, color, size, markings or lack thereof, taste, consistency, or any other identifying physical characteristic of the substance, would lead a reasonable person to believe that the substance is a controlled substance, or (2) is expressly or impliedly represented to be a controlled substance or is distributed under circumstances which would lead a reasonable person to believe that the substance is a controlled substance."

Defendant objected to this instruction because it did not accurately reflect the definition of a look-alike substance and did not contain the entire definition contained in section 102(z). Those portions omitted stated the following:

"For the purpose of determining whether the representations made or the circumstances of the distribution would lead a rea-

sonable person to believe the substance to be a controlled substance under this clause (2) of subsection (z), the court or other authority may consider the following factors in addition to any other factor that may be relevant:

(a) Statements made by the owner or person in control of the substance concerning its nature, use or effect;

(b) Statements made to the buyer or recipient that the substance may be resold for profit;

(c) Whether the substance is packaged in a manner normally used for the illegal distribution of controlled substances;

(d) Whether the distribution or attempted distribution included an exchange of or demand for money or other property as consideration, and whether the amount of the consideration was substantially greater than the reasonable retail market value of the substance." Ill. Rev. Stat., 1982 Supp., ch. 56½, par. 1102(z).

■ In our judgment, the instruction does accurately define a look-alike substance, and we would point out that the defendant tendered no instruction containing the additional material. The specific factors contained in paragraphs (a) through (d) add nothing to the definition in the instruction given. These are evidentiary considerations for the trier of fact's consideration. Defendant did argue to the jury these matters as she deemed them relevant. Certain additional paragraphs, or paragraph (cf. Ill. Rev. Stat., 1982 Supp., ch. 56½, par. 1102(2), eff. Sept. 7, 1982, with Ill. Rev. Stat. 1983, ch. 56½, par. 1102(2)), provide for exclusions from the statute defining look-alike substances. No evidence suggested any of the exclusions were applicable and the defendant had the burden of establishing that she came within an exclusion or exemption (Ill. Rev. Stat. 1983, ch. 56½, par. 1506). It was not error to exclude these exclusions from the definition of look-alike substance.

Defendant also complains that the jury was not told what constituted a controlled substance. But the jury was told in argument that "speed" was a slang expression for amphetamines, instructed to be a controlled substance, and that "quaaludes" was a like expression for methaqualone, defined in the instructions as a controlled substance. These were the only controlled substances in issue or relevant to the State's case so that there could be no confusion that aspirin or caffeine could be considered a controlled substance.

Finally as we have noted the State did not simply proceed on the theory that the defendant delivered a look-alike substance as defined in part (1) of section 102(2). It adopted a greater burden and charged

that defendant distributed look-alike substances which she expressly, not impliedly, represented to be two specific controlled substances, methaqualone and amphetamine. The instructions given the jury required the State to assume this greater burden, which is fully supported by the evidence.

■ Lastly, defendant argues it was error to refuse her tendered instruction on entrapment. While defendant informed the court that she elected to defend on the defense of entrapment, at trial she did not do so. Her defense was that she did not represent substances sold as controlled substances or look-alike substances but as substances like "No-Doz," which contained caffeine, or mild sleeping pills. She denied committing the offense. The defense of entrapment is not available to one who denies the commission of the offense. *People v. Arriaga* (1981), 92 Ill. App. 3d 951, 416 N.E.2d 418.

We need not premise our decision on this basis alone as there was not a scintilla of evidence of entrapment presented at trial. Entrapment is an affirmative defense, and defendant must present some evidence that she was entrapped. Defendant testified that she sold these substances voluntarily and that she was not pressured by Rinn or the agents to make the sales. She was not threatened or promised anything other than money as an inducement to make the sales. Rinn only asked her to make the sales and she agreed. When Agents Burke and Bandy came to her room she never protested, and even though she had never met them before, she sold them the substances without inducement or protest, simply for the money requested and offered.

■ ■ While it is true that only slight evidence of entrapment must be presented before a jury question is raised (*People v. Carpentier* (1974), 20 Ill. App. 3d 1024, 314 N.E.2d 647), there must be some evidence presented that the State agents induced an otherwise innocent person to commit the crime. (*People v. Wurbs* (1976), 38 Ill. App. 3d 360, 347 N.E.2d 879.) Here the uncontroverted evidence was that defendant was predisposed to sell these substances, as she, by her own testimony, had done before. She testified that her contact with Rinn did not in any way influence her in her later dealings with the agents. We can say as a matter of law that on the evidence presented there was no entrapment.

The judgment of the circuit court of Jackson County is affirmed.

Affirmed.

KASSERMAN and WELCH, JJ., concur.