THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
STANLEY GENTRY, Defendant-Appellant.

First District (4th Division)   No. 84—2718

Opinion filed June 18, 1987.

Steven Clark, of State Appellate Defender's Office, and Sachnoff,
Weaver & Rubenstein, Ltd., both of Chicago (Charles J. Ryan, Jr., and
Jeffrey E. Stone, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Kenneth T. McCurry, and John Hoevel, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Following a jury trial, defendant, Stanley Gentry, was convicted of attempted murder (Ill. Rev. Stat. 1983, ch. 38, pars. 8—4(a), 9—1(a)) and aggravated battery (Ill. Rev. Stat. 1983, ch. 38, par. 12—4). At the sentencing hearing, the trial court merged the aggravated battery conviction with the attempted murder conviction and on the charge of attempted murder sentenced Gentry to the Illinois Department of Corrections for a term of 45 years' imprisonment.

On appeal, Gentry asserts that his conviction should be reversed because: (1) the trial court's instruction regarding the intent necessary for attempted murder was prejudicially erroneous; (2) the State's use of certain hearsay statements denied Gentry a fair trial; and (3) the prosecutor committed reversible error by making several improper and prejudicial remarks during closing argument.

BACKGROUND

The record indicates that on December 13, 1983, Gentry and Ruby Hill, Gentry's girlfriend, were in the apartment they shared at 1756 North Talman in Chicago, Illinois. At approximately 9 p.m. the couple began to argue. During the argument, Gentry spilled gasoline on Hill, and the gasoline on Hill's body ignited. Gentry was able to smother the flames with a coat, but only after Hill had been severely burned. Gentry and Hill were the only eyewitnesses to the incident.

Police and paramedics were called to the scene. James Fahey was the first Chicago police officer to arrive. Fahey testified that when he entered Gentry and Hill's apartment, he found Hill's upper body (including her head, face, and arms) to be badly burned. He further testified that Gentry was the only person in the apartment other than Hill. Fahey also stated that he found no matches on the floor of the apartment.

The paramedics who arrived at the scene testified that Hill had suffered third degree burns over 70% of her body. They further testified that after some initial treatment, Hill was transported by ambulance to Cook County Hospital and that Gentry accompanied Hill in the ambulance.

. Wayne Milla, a detective for the Chicago police department, also testified. Milla stated that he arrived on the scene shortly after Fahey. Milla also stated that a gas stove was the only possible source of

ignition in the apartment's kitchen. Milla averred that he originally classified the fire as "accidental" but later changed his mind when he discovered that Hill's clothing had been doused with gasoline.

The victim, Ruby Hill, also testified at trial. Hill stated that she and Gentry had been drinking all afternoon and that both of them were "pretty high." She further testified that Gentry had poured gasoline on her and that the gasoline ignited only after she had gone near the stove in the kitchen. Hill also related how Gentry tried to snuff the fire out by placing a coat over the flames.

Hill also testified as to her relationship with Gentry. She stated that she had lived with Gentry for three years prior to the accident, that she wanted to marry Gentry, and that she still loved Gentry notwithstanding the fire incident. Hill claimed that the entire episode was an accident and that she intended to again live with Gentry after the case was over.

In addition, over the objection of Gentry's counsel, the prosecution proffered certain impeachment evidence. The claimed purpose of this evidence was to impeach Hill as to her assertion that the fire incident was an accident. The prosecution first established the foundation for the impeachment by asking Hill if she had previously claimed that Gentry had threatened her with matches after he had poured gasoline on her. Hill denied it. The prosecution also asked her if she had previously claimed that she was terrified of Gentry. Hill again denied making such a statement. Hill also denied ever stating that she was afraid of Gentry and denied that Gentry had ever tried to choke her while she was taking a bath in the apartment's bathtub.

After Hill denied making positive answers to the aforementioned questions posed by the prosecution, the prosecution set out to "prove-up" the impeachment. First, the prosecution called Jeffrey Zitzka, a Chicago police officer who interviewed Hill while she was in the hospital after the incident. Zitzka testified that Hill had nodded "no" when asked if the incident was an accident and had nodded "yes" as to whether she wanted to press charges.

Diane Meyer, a law clerk for the State's Attorney's office, then testified. Meyer stated that she had heard Hill tell prosecutors that Gentry had lit matches after pouring gasoline on her, that Hill had claimed that the incident was not an accident, and that Hill had also said that she was afraid of Gentry.

Hill's brother, Bill Starnes, testified that Hill had previously told him that Gentry had once tried to choke Hill while she was in the bathtub. Hill's mother also testified. She stated that some time before the incident, Hill had written a letter to her in which Hill

claimed to be "scared to death" of Gentry and that Gentry had once attempted to choke her while she was in the apartment's bathtub.

During the prosecution's closing argument, the record reveals that the prosecutors relied heavily on the impeachment testimony and invited the jury to consider the evidence for its substantive value as well as for what it revealed about Hill's credibility.

At the close of the case, the jury found Gentry guilty of attempted murder and aggravated battery. The lesser aggravated battery conviction was merged into the greater attempted murder conviction at sentencing, where Gentry was sentenced to the Illinois Department of Corrections for a term of 45 years. From his conviction for attempted murder and his sentence, Gentry now appeals.

■ Gentry contends that the jury was improperly instructed on the required mental state for attempted murder where the instructions given would permit a conviction without a finding that Gentry possessed the specific intent to kill. The State, on the other hand, contends that the instructions as given show Gentry's assertion to be illogical. Alternatively, the State maintains that any error in instructing the jury was harmless and that defendant has waived review of this issue by failing to object at trial.

The record evinces the fact that Gentry did indeed fail to object at trial to the instructions in question. However, the specific intent to kill is an essential element of the crime of attempted murder. (*People v. Bryant* (1984), 123 Ill. App. 3d 266, 462 N.E.2d 780.) Accordingly, the alleged error affects Gentry's substantial rights, and we will review this issue under the plain error doctrine. 87 Ill. 2d R. 615(a); *cf. People v. Sanders* (1984), 129 Ill. App. 3d 552, 472 N.E.2d 1156 (error in attempted murder instruction held to be plain error; attempted murder conviction reversed on appeal).

At the close of the presentation of evidence in this case, the following instructions were given. First, the trial court defined "attempt" as it relates to the underlying felony of murder:

"A person commits the offense of murder when he, *with intent to commit the offense of murder* does any act which constitutes a substantial step toward the commission of the offense of murder. The offense attempted need not have been completed." (Emphasis added.)

Second, after giving this definition, the trial court set forth the necessary elements of attempted murder, to wit, an act and intent:

"To sustain the charge of attempt, the State must prove the following propositions:

First: That the defendant performed an act which consti-

tuted a substantial step towards the commission of the offense of murder; and

> Second: That the defendant did so with *intent to commit the crime of murder.*" (Emphasis added.)

Finally, the trial court defined the crime of murder, including all four culpable mental states:

> "A person commits the crime of murder where he kills an individual if, in performing the acts which cause the death, he intends to kill *or* do great bodily harm to that individual; *or* he knows that such acts will cause death to that individual; *or* he knows that such acts create a strong probability of death or great bodily harm to that individual." (Emphasis added.)

■ Gentry contends that the inclusion of all the alternative states of mind in the definitional murder instruction was erroneous because the crime of attempted murder requires a showing of specific intent to kill. Gentry posits that inclusion of all four alternative states of mind permitted the jury to convict him of attempted murder upon a finding that he intended to harm Hill, or acted with the knowledge that his conduct created a strong probability of death or great bodily harm to Hill, even if the jury believed that Gentry did not act with specific intent to kill. We agree with Gentry's position that the jury was misinstructed in this case.

■ Our supreme court has repeatedly held that a finding of specific intent to kill is a necessary element of the crime of attempted murder. (*People v. Jones* (1979), 81 Ill. 2d 1, 405 N.E.2d 343; *People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28; *People v. Trinkle* (1977), 68 Ill. 2d 198, 369 N.E.2d 888.) Indeed, a trial court instructing a jury on the crime of attempted murder must make it clear that specific intent to kill is the pivotal element of that offense, and that intent to do bodily harm, or knowledge that the consequences of defendant's act may result in death or great bodily harm, is not enough. (*People v. Jones* (1979), 81 Ill. 2d 1, 8-9, 405 N.E.2d 343, 346. Accord, *People v. Mitchell* (1984), 105 Ill. 2d 1, 473 N.E.2d 1270; *People v. Barker* (1980), 83 Ill. 2d 319, 415 N.E.2d 404; *People v. Coleman* (1985), 131 Ill. App. 3d 76, 475 N.E.2d 565.) Recently, in *People v. Kraft* (1985), 133 Ill. App. 3d 294, 478 N.E.2d 1154, this court found an identical instruction to be erroneous based on the legal principle cited above. Accordingly, the instructions given in this case were erroneous, since it is clear that the jury was permitted to convict Gentry without specifically finding that Gentry intended to kill Hill. Few errors are more highly prejudicial than the trial court's failure to give the proper instruction on the intent element of a

crime. *People v. Ogunsola* (1981), 87 Ill. 2d 216, 429 N.E.2d 861.

The State attempts to minimize the significance of this error by arguing that the instructions as given actually did require the jury to find specific intent to kill. The State labels as illogical those cases which distinguish between the specific intent to kill and the three other alternative states of mind also found in the definitional murder instruction.

■ The State would read the attempted murder instruction as requiring a showing of any of the alternative mental states sufficient for a conviction of murder. In other words, the State makes no distinction between the mental state required to prove murder and the mental state required to prove attempted murder. We find the State's analysis and conclusion to be erroneous and lacking in legal substance since it fails to contain the judicial reasoning which recognizes the distinction between the intent elements of murder and attempted murder.

Specifically, we cite the *Kraft* case, where defendant's attempted murder conviction was reversed where the jury instructions would have permitted a conviction without a finding of specific intent to kill. (*People v. Kraft* (1985), 133 Ill. App. 3d 294, 478 N.E.2d 1154.) In reversing the defendant's attempted murder conviction in that case, the *Kraft* court analyzed the distinction between the culpable mental states required for murder and attempted murder, noting as follows:

> "Our criminal code contains separate statutory definitions for the four culpable mental states of intent, knowledge, recklessness, and negligence, with knowledge encompassing a distinct and less purposeful state of mind than intent. *** [O]ur State legislature manifested a desire to treat intent and knowledge as distinct mental states when imposing criminal liability for conduct. *** Knowledge is not intent as defined by our statutes, and the jury instructions should reflect this distinction. Accordingly, we hold that in a prosecution for attempted murder, where alternative culpable mental states will satisfy the target crime of murder, but only one is compatible with the mental state imposed by our attempt statute, the incompatible elements must be omitted from the jury instructions." 133 Ill. App. 3d 294, 302, 478 N.E.2d 1154, 1160.

Consequently, it is sufficient only for us to say that we recognize the distinction between the alternative states of mind delineated in the definitional murder instruction, as well as the fact that only the specific intent to kill satisfies the intent element of the crime of at-

tempted murder. Accordingly, the State's assertion that the instructions as given actually required the jury to find that Gentry had a specific intent to kill Hill is doomed.

Alternatively, the State argues that this error is harmless. We note that there are apparently two lines of cases on this point. In the first, our supreme court has reversed convictions for attempted murder without evaluating the evidence to determine if the error is harmless where the jury has not been correctly instructed on the issue of intent. (See *People v. Trinkle* (1977), 68 Ill. 2d 198, 203-04, 369 N.E.2d 888, 891; accord, *People v. Viser* (1975), 62 Ill. 2d 568, 581-83, 343 N.E.2d 903, 909-11.) These cases take the position that when a jury is misinstructed on a fundamental issue (like defendant's intent in this case) the jury lacks a tool necessary for the performance of its function as trier of fact. *Cf. People v. Stromblad* (1978), 74 Ill. 2d 35, 41, 383 N.E.2d 969, 972.

In the second line of cases regarding misinstruction of the jury, our supreme court recognized that errors in giving or refusing to give instructions will not always justify reversal when evidence of defendant's guilt is so clear and convincing that the jury could not reasonably find defendant not guilty. (See *People v. Truelock* (1966), 35 Ill. 2d 189, 192, 220 N.E.2d 187, 190 (evidence of defendant's *knowledge* of the presence of narcotics was clear and convincing); *People v. Ward* (1965), 32 Ill. 2d 253, 256, 204 N.E.2d 741, 743.) The factual distinction between these two rules, however, is based on the issue of defendant's intent to kill. In the first line of cases, the question of defendant's intent *is in issue*, which has been held to be sufficient to require reversal without further consideration of the evidence. (See, *e.g., People v. Trinkle* (1977), 68 Ill. 2d 198, 369 N.E.2d 888; *People v. Viser* (1975), 62 Ill. 2d 568, 343 N.E.2d 903.) In the second line of cases, on the other hand, the fact that defendant formed the requisite intent to kill is blatantly evident from the facts, such that the intent element is *not at issue. People v. Jones* (1979), 81 Ill. 2d 1, 9-10, 405 N.E.2d 343, 346-47 (where the only question was whether the defendant was the perpetrator or one of the perpetrators of the crime, and where the trial court gave an accurate directive attempted murder instruction, followed by an inappropriately complete definitional murder instruction).

■ In the instant case, it is clear that the essential task before the jury was the determination of whether Gentry sufficiently formed the specific intent to kill, in order to satisfy the elements of attempted murder. This is evidenced by the State's efforts to prove that Gentry knew that splashing gasoline on Hill would kill her, as

well as by the State's attempts to impeach Hill's testimony that the incident was accidental. As such, we are faced with a situation where proving that Gentry formed the intent to kill was a necessary predicate to a finding of his guilt.

Given the circumstances delineated above, and given the misinstruction on the crime of attempted murder, we must necessarily conclude that Gentry was prejudiced by the inclusion of the alternative states of mind in the definitional murder instruction. We find this to be a fundamental error and not merely a technical defect cured by the evidence in this case. Indeed, the error which occurred here was in a definition essential for the jury to make a legally permissible judgment as to Gentry's guilt or innocence as to the crime of attempted murder. (*Cf. People v. Stromblad* (1978), 74 Ill. 2d 35, 41, 383 N.E.2d 969, 972.) Justice would best be served by our application of the line of cases which would entitle Gentry to a new trial before a properly instructed jury, precluding our further consideration of the evidence in this case. We note that even if we were to apply the standard used in cases like *Ward* and its progeny (clear and convincing proof of guilt), we would not find the error harmless, as other evidentiary problems surrounding the impeachment of Hill foreclose a clear and convincing showing of Gentry's guilt. This is because proof of Gentry's guilt is inextricably tied to proving the requisite mental state for the crime of attempted murder, which was clearly misstated by the trial court when it gave an erroneous definitional murder instruction. Thus, because we find this to be a fundamental error, it is not necessary for us to continue any further.

In conclusion, based upon the discussion of law and fact stated above, we reverse defendant's conviction and sentence and remand this cause for a new trial in front of a properly instructed jury.

Reversed and remanded.

McMORROW, P.J., and JOHNSON, J., concur.