THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
GEORGE FIELDS, Defendant-Appellant.
First District (2nd Division) No. 85—3500

Opinion filed May 10, 1988.

2

Paul P. Biebel, Jr., Public Defender, of Chicago (Linda J. Seeley, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., John A. Gasiorowski, and Stephanie Funteas Burtzos, Assistant State's Attorneys, of counsel), for the People.

JUSTICE STAMOS* delivered the opinion of the court:

After a jury trial on charges of attempt to commit murder (Ill. Rev. Stat. 1983, ch. 38, par. 8—4), aggravated battery (Ill. Rev. Stat. 1983, ch. 38, par. 12—4), and armed violence (Ill. Rev. Stat. 1983, ch. 38, par. 33A—2), defendant appeals from his conviction and sentence. He raised the defense of insanity; the jury returned a verdict of guilty but mentally ill on each count. Judgment of conviction was entered on the attempted-murder count only, with the other counts merging. Defendant was then sentenced to an extended term of 45 years' imprisonment.

Besides raising constitutional challenges to the guilty-but-mentally-ill (GBMI) verdict, defendant contends that the trial court committed reversible error (1) by denying him a fair trial through erroneous and confusing jury instructions as to whether mental illness might be the predicate for a verdict of not guilty by reason of insanity and (2) by failing to instruct the jury properly as to the three elements of the GBMI verdict.

For the reasons that follow, we reverse and remand. We also consider other issues raised by defendant that may arise on any retrial.

## FACTS

The State's lay witnesses' testimony showed the following: On April 18, 1984 (the offense date), defendant was a kitchen employee of a contract food-service company. The victim, Mary Ann Gappa, was the food-service director.

About six weeks earlier, defendant and employee Patrick Nichols engaged in an argument after Nichols threw a crouton that hit defendant in the face. Gappa warned both men to end their altercation, and they did. At lunch the next day, defendant told employee Albert Johnson that defendant was going to kill Gappa. Defendant made similar statements to Johnson at three other times, most recently a week before the offense date.

---

*This opinion was prepared and concurred in prior to the resignation of Justice Stamos from the court.

On the offense date, defendant received his paycheck from Gappa and told Johnson that he had been cheated of $20 on the check. He then entered Gappa's office and told her that she had cheated him of the $20. She reminded him that his hours had been reduced, gave him his time card, and asked him to compute his hours. Defendant said, "The hell with the time card," tore it up, threw it onto the floor, and called Gappa a "dog bitch." When Gappa asked him whether he would like to repeat himself, he replied that he was going to do more than repeat himself, and he walked out of her office.

Shortly thereafter, defendant removed a folding knife from his pocket but replaced it after being unable to open it. Then defendant, who was shaking, took a serrated bread knife and a butcher knife from a rack, discarded the bread knife as not being sharp enough to cut, and selected a second butcher knife. In each hand, he then held a butcher knife with a 9½-inch blade.

Defendant then proceeded past a co-worker, whom he assured he was not going to hurt, and continued toward Gappa's office while holding the knives in front of him. Overpowering another man, defendant rushed toward Gappa and stabbed her several times, whereupon she tried to protect herself with a chair while she was under her desk. Defendant then began to leave her office, but when he was outside he noticed Gappa trying to arise and close the door. He then reentered her office and resumed stabbing her, this time pulling away from her the chair with which she was trying to protect herself. After leaving one knife buried in her leg, defendant then left Gappa's office and threw down the second knife.

As he left, defendant was heard to say, "I killed that bitch and I am glad," and that he was going to kill a lot of other people because they were messing with him. His walk was normal and calm as he left Gappa's office, although he was shaking his bloody hands. According to Gappa, it was out of character for defendant to attack her. A few minutes after the attack on Gappa, defendant was arrested.

Gappa suffered 13 stab wounds, most of them severe, underwent more than three hours of surgery at Henrotin Hospital, and was an inpatient there for four days.

At trial, defendant called two expert witnesses. One of them, Dr. Melissa Wattenberg, a clinical psychologist at Northwestern Memorial Hospital, had examined defendant soon after the offenses were committed and had diagnosed him as suffering from paranoid-type schizophrenia and being in an acute psychotic state. The other, Dr. Richard Abrams, interviewed defendant in jail for about one hour, which was eight months after the offense date and which was also after Dr. Gil-

bert Bogen of the Cook County Psychiatric Institute had examined defendant and had found him sane. Bogen was called as a rebuttal witness by the State. In cross-examining the defense witnesses and examining Bogen, the State repeatedly referred to reports of a 1982 Psychiatric Institute examination of defendant. In addition, Abrams testified that, when interviewed, defendant had denied past violence except for saying that three years earlier someone told him he tried to burn a house down.

At the close of defendant's evidence, defense counsel moved to declare unconstitutional the statute (Ill. Rev. Stat. 1983, ch. 38, par. 6—2(e)) requiring defendant to bear the burden of proof on insanity; the motion was denied. In the alternative, defendant moved that, if he had to bear the burden of proof on insanity, he be allowed the final closing argument; that motion was denied. The State's final closing argument was devoted to the question of insanity.

The jury found defendant guilty but mentally ill. Defendant then moved for a new trial, which was denied. The court sentenced defendant to an extended term of 45 years' imprisonment. This appeal followed.

Opinion

I. CONSTITUTIONALITY OF GUILTY-BUT-MENTALLY-ILL STATUTES

■ Defendant makes several constitutional attacks on the statutes[1] authorizing a verdict of guilty but mentally ill (GBMI). However, they have all been considered and rejected in other cases. (E.g., People v. Martin (1988), 166 Ill. App. 3d 428, 519 N.E.2d 1085; People v. Carter (1985), 135 Ill. App. 3d 403, 481 N.E.2d 1012, appeal denied (1985), 111 Ill. 2d 557; People v. Smith (1984), 124 Ill. App. 3d 805, 465

---

[1]"An Act to revise the law in relation to the insanity defense and to establish a plea and verdict of guilty but mentally ill ***" was approved and became effective on September 16, 1981, as Public Act 82—553. It amended sections 6—2 and 6—4 of the Criminal Code of 1961 (now codified at Ill. Rev. Stat. 1985, ch. 38, pars. 6—2, 6—4); sections 113—4, 113—5, 115—1, 115—2, 115—3, 115—4, and 115—6 of the Code of Criminal Procedure of 1963 (now codified at Ill. Rev. Stat. 1985, ch. 38, pars. 113—4, 113—5, 115—1, 115—2, 115—3, 115—4, 115—6); and section 5—2—5 of the Unified Code of Corrections (now codified at Ill. Rev. Stat. 1985, ch. 38, par. 1005—2—5). In addition, it added a new section 5—2—6 to the Unified Code of Corrections (now codified at Ill. Rev. Stat. 1985, ch. 38, par. 1005—2—6).

Defendant cites some of these provisions in the "Points and Authorities" section of his brief, but he fails to comply with Supreme Court Rule 341(e)(5) (107 Ill. 2d R. 341(e)(5)) by setting forth the pertinent parts verbatim in a separate section or in an appendix.

N.E.2d 101, *appeal denied* (1984), 101 Ill. 2d 575.) Moreover, two Federal cases cited by defendant are distinguishable, since they both involved longer sentences that were imposed either for previously discontinued special-training purposes or merely because a defendant was considered mentally ill, whereas in the case at bar defendant's sentence was not lengthened for the sake either of promised therapy or of his mental illness. *United States ex rel. Sero v. Preiser* (2d Cir. 1974), 506 F.2d 1115, *cert. denied* (1975), 421 U.S. 921, 43 L. Ed. 2d 789, 95 S. Ct. 1587; *Ohlinger v. Watson* (9th Cir. 1980), 652 F.2d 775.

Declining to reexamine the previous holdings in similar cases, we therefore reject defendant's due process and equal protection challenges to the statutory provisions in question.

## II. INSTRUCTIONS ON INSANITY AND GBMI

Defendant raises two contentions regarding the jury instructions on insanity and the GBMI verdict: (1) that it was plain error for the jury to be given an allegedly confusing and erroneous instruction that mental illness could not be the basis of an insanity defense; and (2) that the jury was not given an instruction on the three statutory elements of a GBMI verdict that must be proved beyond a reasonable doubt, citing *People v. Fierer* (1987), 151 Ill. App. 3d 649, 503 N.E.2d 594, *appeal allowed* (1987), 115 Ill. 2d 545.

The State responds that defendant waived the first contention by objecting to the instruction only on the grounds that the GBMI legislation was unconstitutional rather than on the grounds now advanced and by failing to tender a different instruction. Alternatively, the State responds that the instruction correctly stated the law, citing *People v. Brady* (1985), 138 Ill. App. 3d 238, 251, 485 N.E.2d 1159, 1168-69, *appeal denied* (1986), 111 Ill. 2d 590.

As to the second contention, the State argues waiver by failure to object or tender an instruction and then alternatively argues that, as distinguished from *Fierer*, no erroneous instruction on the elements was given in the present case, the instructions fully defined the applicable law, and the instructions informed the jury that the State's case must be proved beyond a reasonable doubt.

In the present case, State's instruction No. 18 defined insanity as follows:

> "A person is insane and not criminally responsible for his conduct if at the time of the conduct, as a result of *mental disease or mental defect*, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to requirements of law." (Emphasis added.)

State's instruction No. 21 then stated:

"A person is guilty but mentally ill if at the time of the commission of an offense he was not insane but was suffering from a *mental illness.*

*Mental illness means* a substantial *disorder* of thought, mood or behavior *which affected a person* at the time of the commission of the offense and which impaired the person's judgment, *but not to the extent* that he is unable to appreciate the wrongfulness of his behavior or is unable to conform his conduct to the requirements of law." (Emphasis added.)

The relevant statutory language tracks State's instruction No. 18 as to insanity and then reads as follows with regard to the GBMI finding:

"Sec. 6—2. Insanity. ***

***

(c) A person who, at the time of the commission of a criminal offense, was not insane but was suffering from a mental illness, is not relieved of criminal responsibility for his conduct and may be found guilty but mentally ill.

(d) For purposes of this Section, 'mental illness' or 'mentally ill' means a substantial disorder of thought, mood, or behavior which afflicted a person at the time of the commission of the offense and which impaired that person's judgment, but not to the extent that he is unable to appreciate the wrongfulness of his behavior or is unable to conform his conduct to the requirements of law." Ill. Rev. Stat. 1985, ch. 38, par. 6—2.

As to a jury verdict of GBMI, the relevant statutory language is as follows:

"When the affirmative defense of insanity has been presented during the trial, the court, where warranted by the evidence, shall also provide the jury with a special verdict form of guilty but mentally ill, as to each offense charged and *shall separately instruct the jury* that a special verdict of guilty but mentally ill may be returned instead of a general verdict, but *that such special verdict requires* a unanimous finding by the jury *beyond a reasonable doubt* that the defendant committed the acts charged *and* that the defendant was not legally insane at the time of the commission of those acts *but* that he was mentally ill at such time." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 38, par. 115—4(j).

 Where a defendant fails to object to the language of an instruction submitted by the State or to offer an alternative instruction,

the issue has been held waived. (*People v. Springs* (1972), 51 Ill. 2d 418, 424-25, 283 N.E.2d 225, 228-29, *appeal dismissed and cert. denied sub nom. Hill v. Illinois* (1972), 409 U.S. 908, 34 L. Ed. 2d 169, 93 S. Ct. 252; *People v. Smith* (1988), 165 Ill. App. 3d 603, 611, 518 N.E.2d 1382, 1388; see also *People v. Roberts* (1979), 75 Ill. 2d 1, 10-15, 387 N.E.2d 331, 335-38.) In the present case, defendant did not object at trial or tender instructions different from those given, and his post-trial motion was exceedingly general if it raised his instruction issues at all. Nevertheless, where alleged error is so substantial as to reflect on the fairness or impartiality of trial, regardless of how closely balanced the evidence is, or where the jury's verdict may have resulted from the error, the plain-error doctrine is properly applied to permit review despite a claim of waiver. *People v. Sanders* (1983), 99 Ill. 2d 262, 273, 457 N.E.2d 1241, 1246; *People v. Szabo* (1983), 94 Ill. 2d 327, 355, 447 N.E.2d 193, 206, *aff'd* (1986), 113 Ill. 2d 83, 497 N.E.2d 995, *cert. denied* (1987), 479 U.S. 1101, 94 L. Ed. 2d 181, 107 S. Ct. 1330; *People v. Sales* (1986), 151 Ill. App. 3d 226, 230, 502 N.E.2d 1221, 1224; *People v. Davis* (1984), 130 Ill. App. 3d 41, 52, 473 N.E.2d 387, 396.

■ In the present case, the combination of errors alleged to have affected the instructions goes to the heart of whether the jury properly chose between an insanity acquittal and a mental-illness conviction. Whether defendant performed the acts charged was not at issue. If the jury was given misleading or inadequate instructions on the possible verdicts and the definitions of the relevant mental states, it may have chosen conviction over acquittal as a consequence. Therefore, we invoke the plain-error doctrine under Supreme Court Rule 451(c) (107 Ill. 2d R. 451(c)) and review defendant's contentions regarding the instructions. See *People v. Crews* (1988), 122 Ill. 2d 266, 275; *People v. Fierer* (1987), 151 Ill. App. 3d 649, 654, 503 N.E.2d 594, 597-98, *appeal allowed* (1987), 115 Ill. 2d 545.

Defendant argues that the language in State's instruction No. 21 (to the effect that mental *illness* means a disorder that did not prevent the defendant from appreciating the criminality of his acts or from conforming his acts to the law) contradicted the language in State's instruction No. 18 (to the effect that insanity means that, because of mental *disease* or *defect*, defendant was unable to appreciate his acts' criminality or conform them to the law). Defendant argues that "disease" or "defect" is synonymous with "illness" and that either (1) the jury could not tell from these instructions whether it might acquit a mentally ill defendant as insane or (2) the jury was impelled by instruction No. 21 toward a GBMI verdict despite instruction No. 18.

According to defendant, the overall effect of the instructions was to provide the jury with an incorrect statement that insanity cannot be predicated on "mental illness." To bolster this contention, defendant points to references throughout the expert witnesses' testimony that ascribed "mental illness" to defendant, as well as references to "mental illness" in the prosecution and defense closing arguments.

A similar argument was made and rejected in *People v. Brady* (1985), 138 Ill. App. 3d 238, 250-51, 485 N.E.2d 1159, 1168-69, *appeal denied* (1986), 111 Ill. 2d 590. Defendant tries to distinguish *Brady* by pointing out that there, the jury found the defendant simply sane and guilty, thus avoiding a choice between insanity or mental illness, whereas in the present case the jury had to make such a choice. This is not a wholly satisfactory distinction, however, because if the instructions were truly confusing in *Brady*, they may well have led the jury to opt for the only intelligible verdict, one based on sanity and guilt, which was a choice comparable in moment to that arguably made in the present case between insanity and a GBMI verdict.[2] The *Brady* court's implicit conclusion that the instructions were not confusing is as applicable to the present case as to *Brady*.

■ Moreover, the instructions in the present case do not readily lend themselves to defendant's interpretation. The first, on insanity, essentially states that only if a mental disorder prevents one from appreciating the criminality of one's acts or conforming them to the law will one be considered insane. The second, on the GBMI and mental-illness definitions, begins by stating essentially that if an offender was suffering from a mental disorder but was not insane, the offender is guilty but mentally ill. Then the instruction defines the disorder—"mental illness"—in question.

Granted, the second instruction's definition of "mental illness" would have been improved (and would have obviated defendant's contention) if it had at least been referenced specifically and solely to its immediately preceding paragraph on the definition of GBMI.[3] How-

---

[2]It is also at least arguable that the jury in the present case chose merely between a guilty verdict and a GBMI verdict.

[3]Defendant proposes even cleaner language: "You may enter a verdict of 'guilty but mentally ill' if you find that the defendant suffered a substantial disorder of thought, mood, or behavior which affected him at the time of the commission of the offense and which impaired his judgment but not to the extent that he was unable to appreciate the criminality of his conduct or was unable to conform his conduct to the requirements of law." However, to track the statute more exactly, "affected" should be corrected to read "afflicted" in both defendant's proposal and in State's instruction No. 21 as actually given.

ever, it is difficult to read the concluding clause—"but not to the extent that he is unable [etc.]"—as stating that mental illness cannot in any circumstances lead to the loss of control that constitutes insanity. This would be a more strained construction of the clause than to read it as simply defining the loss-of-control floor required for the insanity rather than the GBMI verdict. This is especially true when the two instructions are taken together to establish their context. We therefore hold that the instructions as given were not so inaccurate and misleading as to deny defendant a fair jury determination of his defense.

■ Defendant's second contention, regarding omission of an instruction on the GBMI verdict's three elements, presents a closer question. The statutory language prescribes what the court's GBMI instructions shall include. (Ill. Rev. Stat. 1985, ch. 38, par. 115—4(j).) A criminal trial court should see that the jury is instructed on the elements of the offense, the presumption of innocence, and the burden of proof. (*People v. Mullen* (1980), 80 Ill. App. 3d 369, 376, 399 N.E.2d 639, 645; *People v. Swimley* (1978), 57 Ill. App. 3d 116, 130, 372 N.E.2d 887, 898, *appeal denied* (1978), 71 Ill. 2d 605, *cert. denied* (1978), 439 U.S. 911, 58 L. Ed. 2d 257, 99 S. Ct. 281.) A defendant is entitled to have the jury instructed on the law applicable to the facts underlying the defense. *People v. Crutcher* (1979), 72 Ill. App. 3d 239, 247, 390 N.E.2d 571, 577.

■ Against defendant's citation of *People v. Fierer* (1987), 151 Ill. App. 3d 649, 503 N.E.2d 594, *appeal allowed* (1987), 115 Ill. 2d 545, which held that incorrectly instructing the jury on the GBMI verdict's elements was one of two errors regarding instructions that required reversal and a new trial, the State argues that throughout the instructions the jury was informed that the State had the burden of proving defendant's guilt beyond a reasonable doubt. Yet, even though jury instructions should be considered as a whole (*People v. Lewis* (1977), 53 Ill. App. 3d 89, 92, 368 N.E.2d 619, 622), at least one instruction introduced the concept of proof by preponderance of evidence when the jury was told that defendant was required to prove insanity by that standard. No instruction told the jury that defendant must be proved beyond a reasonable doubt not to have been insane *and* must be proved beyond a reasonable doubt to have been mentally ill before a GBMI verdict could be returned—yet the statute, read literally, appears to require just that instruction. Ill. Rev. Stat. 1985, ch. 38, par. 115—4(j); *Fierer*, 151 Ill. App. 3d 649.

Having been introduced to the preponderance-of-evidence standard with regard to insanity, the jury could well have applied that standard to the proof required for a GBMI verdict, particularly since despite the

statute it was not instructed otherwise. It is less than compelling for the State to argue that in this case "the instructions did fully define the applicable law" and that the jury "necessarily determined" that defendant committed the acts charged, was not legally insane, but was mentally ill. Such an assertion ignores the omission of a statutorily required instruction and ignores the question of what standard of proof the jury used or should use. In this case, it is not possible to say with confidence that the jury's verdict would have been the same with the omitted instruction. *Cf. People v. Smith* (1988), 165 Ill. App. 3d 603, 610-11, 518 N.E.2d 1382, 1387 (no plain error because jury was aware of proper standard of proof on insanity defense).

Defendant might well have failed to prove by a preponderance of evidence that he was insane, yet there might have remained a reasonable doubt as to whether he was sane. Of course, if the latter were true and a properly instructed and compliant jury would consequently be precluded from returning a GBMI verdict, it would not be precluded from returning either a guilty verdict—since all defendants are presumed sane (*People v. Moore* (1986), 147 Ill. App. 3d 881, 884, 498 N.E.2d 701, 703, *appeal denied* (1987), 113 Ill. 2d 581)—or a not guilty verdict. In the present case, a not guilty verdict would have been bizarre given the uncontroverted evidence that defendant performed the acts charged. Therefore, if proof beyond a reasonable doubt were lacking that defendant was not insane but was mentally ill, the hypothetical jury with presumably proper instructions could logically have found him guilty only—which it might well be against defendant's interest to urge on appeal, but which would be the product of statutory interplay. (Compare Ill. Rev. Stat. 1985, ch. 38, par. 6—2(e), with Ill. Rev. Stat. 1985, ch. 38, par. 115—4(j).) In any event, this arguable anomaly need not detain us, since defendant contends on appeal that the GBMI verdict does disadvantage him more greatly than a simple guilty verdict and that the defective instructions denied him a fair trial. Compare *People v. Gurga* (1986), 150 Ill. App. 3d 158, 166, 501 N.E.2d 767, 773 (stigma of GBMI not necessarily less than stigma of guilty verdict), with *People v. Smith* (1984), 124 Ill. App. 3d 805, 809-10, 465 N.E.2d 101, 104-05 (mental-illness stigma merely collateral to and not appreciably a worsening of stigma of guilt itself).

Moreover, any arguable conflict between a defendant's burden of proof as to insanity and the State's burden as to a GBMI finding is the result of legislative action in altering the former (see Pub. Act 83—288 (codified at Ill. Rev. Stat. 1985, ch. 38, pars. 3—2, 6—2)) but not the latter. Pending guidance from the supreme court or clarification by the legislature, defendant in the case at bar should not be compelled to

entrust the proper reconciliation of statutory conflicts to a jury, particularly one left altogether uninstructed on the burden of proof as to a GBMI finding.

▮▮ In cases where the alleged error rises to constitutional magnitude, it cannot be deemed harmless unless it is harmless beyond a reasonable doubt. (*People v. Martin-Trigona* (1986), 111 Ill. 2d 295, 304, 489 N.E.2d 1356, 1360; *People v. R.C.* (1985), 108 Ill. 2d 349, 355, 483 N.E.2d 1241, 1244.) The standard of review for error that affects the Federal constitutional right to a fair trial is whether there is a reasonable possibility that the error might have contributed to a defendant's conviction. (*People v. Merideth* (1987), 152 Ill. App. 3d 304, 319, 503 N.E.2d 1132, 1144, *appeal denied* (1987), 114 Ill. 2d 553.) The present case is not like *People v. Cooney* (1985), 136 Ill. App. 3d 989, 484 N.E.2d 802, *appeal denied* (1986), 111 Ill. 2d 571, *cert. denied* (1986), 476 U.S. 1159, 90 L. Ed. 2d 720, 106 S. Ct. 2278, where alleged error in a GBMI instruction was harmless because the defendant was found guilty regardless. Here, defendant complains that he was found guilty but mentally ill on the basis of faulty GBMI instructions and that a GBMI verdict is more harmful than a guilty verdict. Nor, for example, is this a case like *People v. Upton* (1987), 151 Ill. App. 3d 1075, 503 N.E.2d 1102, where an erroneous instruction favored the defendant because it placed a greater burden on the State and the error was thus harmless; here, omission of the statutory GBMI elements from the instructions may have meant that the GBMI verdict was reached more easily than was proper because the State's burden for that verdict (according to the statute, proof beyond reasonable doubt that defendant was not insane) was reduced.

Thus, we cannot find harmless error in the trial court's failure to instruct on the GBMI verdict's three statutory elements but instead must reverse the judgment and remand. We therefore need not consider other issues raised by defendant but address only such as may arise on retrial.

### III. 1982 CHARGES AND SANITY FINDING

Defendant argues that, over repeated objection, during examination of witnesses and in closing argument the State made repeated references to a 1982 examination of defendant at the Cook County Psychiatric Institute, in which "case" defendant was found to be legally sane. Defendant contends that the State thereby made use of inadmissible evidence of a prior criminal charge and of a previous sanity finding.

▮▮ Practically every event in a defendant's life is relevant when the defendant interposes an insanity defense, and inquiry may include

consideration of the defendant's criminal history. (*People v. Vanda* (1982), 111 Ill. App. 3d 551, 556, 560, 444 N.E.2d 609, 614, 616, *appeal denied* (1983), 93 Ill. 2d 548, *cert. denied* (1983), 464 U.S. 841, 78 L. Ed. 2d 130, 104 S. Ct. 136.) Where a defendant's sanity is in issue, great latitude is allowed in admitting evidence relating to mental condition because, rather than an isolated cross-section of a single series of acts, one " 'must examine the person, his history, his relationship with the victim, prior mental illnesses and other intervening factors of causation.' " (*Vanda*, 111 Ill. App. 3d at 556, 444 N.E.2d at 614, quoting *People v. Haun* (1966), 71 Ill. App. 2d 262, 268, 217 N.E.2d 470, 473; accord *People v. Martinez* (1980), 86 Ill. App. 3d 486, 491, 408 N.E.2d 358, 362.) Even though, as a general rule, evidence is inadmissible if it points to crimes unrelated and unconnected to the crime for which the defendant is being tried, yet evidence of other offenses is admissible if relevant for any purpose other than to show propensity to commit a crime. (*Vanda*, 111 Ill. App. 3d at 560, 444 N.E.2d at 617.) Nevertheless, even if relevant, evidence of a defendant's prior crime is inadmissible if its prejudicial effect outweighs its probative value. *Vanda*, 111 Ill. App. 3d at 561, 444 N.E.2d at 617; accord *People v. Butler* (1975), 31 Ill. App. 3d 78, 80, 334 N.E.2d 448, 450, *appeal denied* (1975), 61 Ill. 2d 598.

In addition, an expert may be cross-examined for the purpose of explaining, modifying, or discrediting the expert's testimony. (*People v. Del Prete* (1936), 364 Ill. 376, 380, 4 N.E.2d 484, 486; *People v. Conrad* (1967), 81 Ill. App. 2d 34, 47-48, 225 N.E.2d 713, 720, *aff'd* (1968), 41 Ill. 2d 13, 241 N.E.2d 423.) An expert may be cross-examined to ascertain what factors were taken into account and what ones disregarded in arriving at a conclusion, as well as to bring out any other relevant facts, and any pertinent fact, whether or not in evidence, may be assumed in a hypothetical question to test a witness's accuracy or skill. (See 18 L. & Prac. *Evidence* §331 (1956).) The adversary may on cross-examination supply omitted facts and ask the expert if the expert's opinion would be modified by them. *Chloupek v. Jordan* (1977), 49 Ill. App. 3d 809, 815, 364 N.E.2d 650, 655.

In the case at bar, the State cannot be said to have offered testimony that defendant was criminally charged on a previous occasion. Testimony that defendant was examined in 1982 by the Cook County Psychiatric Institute, even though it is part of the court system, did not amount to saying that he had been criminally charged, since a person can be examined by the institute for other reasons than pendency of a criminal charge. Even the one reference to defendant's "case" in connection with his previous examination did not necessarily

connote a criminal case; it could as easily have signified a clinical case and at worst is no more than the "fleeting references" to a defendant's prior crime that were found not to be unduly prejudicial in *Vanda* (111 Ill. App. 3d at 561, 444 N.E.2d at 617). As for connecting defendant with an earlier arson, that reference came originally from the mouth of defendant's own expert on direct examination, and in any event it merely attributed to defendant the statement that someone else had told him he burned or tried to burn a house down, which is several steps removed from testimony that defendant was criminally charged. Therefore, we find that the State did not adduce evidence that defendant had previously been criminally charged.

Neither can the State be said to have improperly referred during cross-examination to a finding that defendant was sane two years before the offense date. Inquiry of defendant's experts as to whether the 1982 sanity finding had affected or would affect their opinions was proper under Illinois law as a means of testing the experts' opinions. The 1982 finding included reference to evidence that defendant was then feigning mental illness, which was relevant to whether he was feigning in the case at bar and to whether the experts' opinions were sound. Moreover, although defendant argues that sanity is a legal rather than a medical concept and thus a finding thereof is not the type of datum on which an expert should be allowed to rely, the issue was not whether the defense experts should have relied on such a finding but whether they did rely or would have relied on it and its underlying data. In addition, *Vanda* teaches that "Illinois courts prefer to have a medical expert in an insanity defense case testify in terms of the insanity statute" and that testimony in such terms is not an improper offer of legal rather than medical expertise. *Vanda*, 111 Ill. App. 3d at 568, 444 N.E.2d at 622.

Defendant's contention that in its closing argument the State referred to the 1982 sanity finding as substantive evidence is more troublesome. Any improper use during closing argument of evidence that was introduced for a limited purpose should not be tolerated. (*People v. Hunter* (1984), 124 Ill. App. 3d 516, 531, 464 N.E.2d 659, 672, *appeal denied* (1984), 101 Ill. 2d 571.) The evidence of defendant's 1982 sanity finding was permissible only for the purpose of testing experts' opinions as to his sanity on the offense date; it was not substantive evidence of his sanity on the offense date, nor was his sanity at an earlier date substantively relevant. (Ill. Rev. Stat. 1985, ch. 38, pars. 6—2(a), (c); *People v. Littlejohn* (1986), 144 Ill. App. 3d 813, 826, 494 N.E.2d 677, 685, *appeal denied* (1986), 112 Ill. 2d 587.) However, defendant is incorrect when he argues that the State "used the mate-

rial substantively in closing rebuttal argument to argue that defendant had no history of mental illness." The State's argument was merely in reply to defense argument that defendant did have a history of mental illness. If it was not substantively relevant for defense counsel thus to argue, then neither was a reply to that argument an attempt to argue substantively. Where comments and arguments are invited by defense counsel, defendant cannot then claim prejudice when the State responds. (*People v. Perez* (1983), 113 Ill. App. 3d 143, 149, 446 N.E.2d 1229, 1234, *appeal denied* (1983), 96 Ill. 2d 547.) While the State's comments were arguably irrelevant to the issues of the case, the defense argument on the subject was equally so. Therefore, we find that the State's closing argument did not improperly refer to the 1982 sanity finding as substantive evidence of defendant's sanity on the offense date.

### IV. ATTEMPTED-MURDER INSTRUCTIONS

■■■ Defendant contends that the court committed plain error when the jury was improperly instructed on the requisite intent for attempted murder. The instructions given might have allowed the jury to convict defendant of attempted murder even though he may have intended only to do great bodily harm.

Attempted-murder instructions must unambiguously reflect the requirement of specific intent to kill. (*People v. Harris* (1978), 72 Ill. 2d 16, 27, 377 N.E.2d 28, 33; *People v. Trinkle* (1977), 68 Ill. 2d 198, 204, 369 N.E.2d 888, 890; *People v. Kraft* (1985), 133 Ill. App. 3d 294, 302, 478 N.E.2d 1154, 1160, *appeal denied* (1985), 108 Ill. 2d 580; Illinois Pattern Jury Instructions, Criminal, No. 7.01, Committee Note (2d ed. 1981).) Although defendant did not object at trial, in *Harris* the supreme court found plain error even though neither defendant adequately raised the issue in the trial court. We therefore have considered defendant's contention under the plain-error doctrine. 107 Ill. 2d Rules 451(c), 615(a); *People v. Jones* (1979), 81 Ill. 2d 1, 7, 405 N.E.2d 343, 345; *Harris*, 72 Ill. 2d at 28, 377 N.E.2d at 33; *People v. Powell* (1987), 159 Ill. App. 3d 1005, 1013, 512 N.E.2d 1364, 1370; *People v. Gentry* (1987), 157 Ill. App. 3d 899, 902, 510 N.E.2d 963, 965.

However, where evidence of a defendant's guilt is so clear and convincing that a jury could not reasonably have found the defendant not guilty, an error in the instructions does not require reversal. (*Jones*, 81 Ill. 2d at 9-10, 405 N.E.2d at 346-47; *Powell*, 159 Ill. App. 3d at 1013, 512 N.E.2d at 1370; see also *Gentry*, 157 Ill. App. 3d at 905, 510 N.E.2d at 967 (recognizing line of cases where error harmless because intent blatantly evident).) We hold that the evidence of defendant's in-

tent to kill was so blatantly clear and convincing that the error in instructing on attempted murder was harmless. Nevertheless, on any retrial, proper instructions should be given.

## V. ORDER OF CLOSING ARGUMENTS

■■■ Defendant contends that if, as held by the Supreme Court of the United States in *Leland v. Oregon* (1952), 343 U.S. 790, 96 L. Ed. 1302, 72 S. Ct. 1002, and by the trial judge in the present case, his burden was not to disprove elements of the offense but rather to prove insanity, then he should have had the last closing argument where insanity was the only controverted issue. Accordingly, he contends that he was denied his sixth amendment right to counsel and a fair trial. (U.S. Const., amend. VI.) Defendant also contends in his reply brief that, even if the State has the burden of proof on the offense, his burden on insanity entitled each side to one closing argument on the offense and one on insanity, with defendant to have the last one.

The burden is on the prosecution to prove beyond a reasonable doubt all the material and essential facts or elements constituting the crime. (*People v. Weinstein* (1966), 35 Ill. 2d 467, 470, 220 N.E.2d 432, 433.) Occasionally, where the defendant has the sole burden of proof and plaintiff need present no evidence, the defendant has the right to open and close (*Washer v. Tanner* (1968), 100 Ill. App. 2d 157, 159, 241 N.E.2d 202, 203), but when the plaintiff must prove anything, the plaintiff has the right to open and close (*National Bank v. Olson* (1986), 143 Ill. App. 3d 965, 969, 493 N.E.2d 736, 739, citing *Liptak v. Security Benefit Association* (1932), 350 Ill. 614, 618, 183 N.E. 564, 566 (which defendant cites)). Defendant's contentions fail to acknowledge the distinction between what is at issue and what must be proved. Even though defendant did not contest performance of the charged acts or the intent that accompanied them (thus refraining from putting them in issue), he need not have contested them or offered any evidence at all, yet the State was still required to prove them.

Defendant's citation of *Liptak* on the relationship between burden of proof and right to argue last is unpersuasive, since in that civil case the plaintiff had no burden whatever because defendant had filed no plea of general issue, whereas defendant had filed an affirmative special plea on which it had the burden. (*Liptak*, 350 Ill. at 618, 183 N.E. at 566.) In the present case, by contrast, the State had the burden of proof beyond a reasonable doubt, whether or not defendant ever entered a single plea or offered a bit of evidence.

As for defendant's suggestion that there be four closing arguments—one each on the offense, one each on insanity, with defendant

arguing last on insanity—not only is this contention advanced solely in the reply brief, but also it rests primarily on a California case that has been rejected by our supreme court in another context and on an unreported trial-court capital case involving the insanity defense and now pending appeal in the Illinois Supreme Court. (*People v. Bandhauer* (1967), 66 Cal. 2d 524, 426 P.2d 900, 58 Cal. Rptr. 332, *cert. denied* (1967), 389 U.S. 878, 19 L. Ed. 2d 167, 88 S. Ct. 178; People v. Scott (1986), No. 84 C 9248, *appeal filed* (Ill. 1986), No. 64287.) Despite our supreme court's somewhat cursory treatment of *Bandhauer* when reviewing a capital sentencing hearing in *People v. Caballero* (1984), 102 Ill. 2d 23, 47-48, 464 N.E.2d 223, 235, *cert. denied* (1984), 469 U.S. 963, 83 L. Ed. 2d 298, 105 S. Ct. 362, as a lower court of review we decline to contradict the supreme court's clear preference for the traditional grant of two closing arguments to the prosecution and one to the criminal defendant: "If the prosecutor's rebuttal comments (closing comments) are properly limited to their intended purpose, there would be no reason to permit the defendant to address the jury further. In the normal course of a summation to the jury, of necessity, only one side may open." *Caballero*, 102 Ill. 2d at 48, 464 N.E.2d at 235.

The supreme court did not in terms limit its rejection of the *Bandhauer* approach to capital sentencing hearings only. Besides, in *People v. Williams* (1983), 97 Ill. 2d 252, 302, 454 N.E.2d 220, 244, *cert. denied* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct. 2364, the supreme court wrote that, although the State acknowledged that neither side had the burden of proof at such a hearing, "[t]he State's contention that it has the burden of going forward with the evidence *** would appear to be correct," thus reducing the force of defendant's attempted distinction here as to his burden.

Accordingly, the trial court did not err by declining to exercise its discretion to alter the traditional number and order of closing arguments.

### CONCLUSION

In light of the foregoing, we reverse the judgment and sentence of the trial court and remand this cause to the circuit court of Cook County.

Reversed and remanded.

HARTMAN, P.J., and BILANDIC, J., concur.