THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL BRADY, Defendant-Appellant.

First District (5th Division)   No. 83—0122

Opinion filed November 1, 1985.—Rehearing denied December 16, 1985.

240

Julius Lucius Echeles, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Jane Liechty, and Mary Ann Sullivan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PINCHAM delivered the opinion of the court:

A jury found the defendant, Michael Brady, guilty of the murder of Joseph Wellner. He was sentenced to 20 years' imprisonment. On appeal, the defendant contends for reversal that: (1) the evidence failed to establish his guilt of murder beyond a reasonable doubt; (2) the trial judge erred in admitting into evidence (a) the defendant's prior criminal activity, (b) a psychiatrist's testimony which impugned the defendant's credibility, (c) testimony that the defendant was informed of his *Miranda* rights upon his arrest; (3) the defendant was irreparably prejudiced by a police officer's volunteered testimony that the defendant was involved in narcotics; (4) the prosecutor's closing argument was prejudicial; (5) the evidence supported a finding of manslaughter; (6) the trial judge erred in refusing to instruct the jury on involuntary manslaughter; and (7) the trial court erred in its insanity instruction. We affirm.

The evidence at trial was uncontradicted that at about 11:30 p.m. on January 22, 1982, in Chicago, in the kitchen of the first-floor apartment of Doris Rutledge, the defendant shot Joseph Wellner in the back of his head and killed him. Immediately prior to the shooting, Ed McGallo, the boyfriend of Doris Rutledge, was asleep on the living room couch. Rose Rutledge, Doris Rutledge's daughter, who was engaged to Wellner, was asleep in the bedroom. Doris Rutledge,

her son John Rutledge, Wellner and the defendant were sitting and talking at the kitchen table. The defendant stood up and went into the bedroom where Rose Rutledge was sleeping. The defendant called out Rose's name and then left the bedroom with a gun. The defendant aimed the gun at the back of Wellner's head and without uttering a word, fired a shot into Wellner's head from a distance of about five or six feet. Wellner fell to the floor, mortally wounded.

Rose Rutledge was awakened by the noise of the gunshot. She sat up in bed and saw the defendant holding the gun and Wellner on the kitchen floor, bleeding from his head. The defendant again entered Rose's bedroom and stated that he shot Wellner because Wellner was trying to kill him. The defendant told Rose to tell her mother and brother that he would shoot them if they did not come out of the other bedroom where they had taken refuge. Rose pleaded with the defendant to give her the gun, which he did. Doris and John Rutledge then came out of the bedroom. The defendant told them to watch the television and to "act naturally."

Later, when there was a knock at the door, the defendant told Rose to clean up the floor and ordered John to move Wellner's body into a bedroom. The defendant told Rose to leave with him and instructed John to bury Wellner's body in the basement.

Rose and the defendant left the apartment and got in the defendant's car, which the defendant drove on the Dan Ryan Expressway to his home on the city's south side. During the ride, the defendant emptied the gun and threw the bullets out the car window.

When they arrived at the defendant's apartment, the defendant put the gun under a mattress and took a shower. Later, he gave Rose a pair of pajamas and told her to put them on and to go into the bedroom and lie in the bed. The phone rang. Rose answered it and recognized Julius Bagnelle's voice. The defendant informed Bagnelle that he had shot the deceased, that he was not hiding and that if he went to jail, Bagnelle knew what to do. After the phone conversation, the defendant told Rose that he was going to have sex with her. The police then arrived and arrested the defendant.

## I

Defendant first contends that he was not proven guilty of murder beyond a reasonable doubt because there was insufficient evidence that he acted knowingly and with the intent to kill. Murder is defined in section 9—1(a) of the Illinois Criminal Code as follows:

"A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the

death:

>(1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or
>
>(2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another; or
>
>(3) He is attempting or committing a forcible felony other than voluntary manslaughter." Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a).

Defendant does not dispute that the evidence established that he shot Wellner. In fact, the defendant so testified. He further testified, however, that he did not know why he shot Wellner, that he did not knowingly or intentionally shoot Wellner and that he was not legally responsible for the shooting because he was under the influence of drugs and was unable to conform his conduct to the requirements of the law or to appreciate the criminality of his conduct. Defendant's contention is premised on his testimony at trial that he ingested PCP and cocaine prior to the shooting, and on the opinion testimony of a defense witness, Dr. John Adams, that the defendant was under the influence of drugs when he shot Wellner.

██ There was additional testimony, however, by the State's witnesses, Rose, John and Doris Rutledge, that there was nothing unusual about the defendant after the shooting, that the defendant walked down the icy stairs without difficulty and without the use of the handrail when he left the apartment with Rose, and that the defendant, again without any difficulty, drove his car on the Dan Ryan Expressway to his home on the south side of the city. This testimony, coupled with the previously mentioned facts of the shooting, was presented to the jury for its determination as to whether defendant acted knowingly or with the intent to kill. There was ample evidence to support the jury's verdict. The verdict therefore will not be disturbed.

Defendant contends that he was under the influence of drugs when he fired the gun and that he therefore could not have had the mental capacity to form the requisite intent to kill Wellner. From the evidence presented, this argument must be rejected. In addition to the aforementioned testimony that the defendant acted normally before and after the shooting, John and Doris Rutledge denied that the defendant had used drugs prior to the shooting. Furthermore, the defendant was arrested approximately four hours after the shooting and the arresting officer testified that the defendant walked and spoke with no difficulty. In his opinion, the defendant was not under

the influence of drugs when he was arrested.

It is provided in section 6—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 6—3):

"A person who is in an intoxicated or drugged condition is criminally responsible for his conduct unless such a condition either:

(a) Negatives the existence of a mental state which is an element of the offense; or

(b) Is involuntarily produced and deprives him of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law."

■ By the defendant's own testimony, his drug use was voluntary. For that reason, there was no issue presented as to whether the defendant had the capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law, as stated in section (b) above. The question, therefore, was whether under section (a) the defendant's drugged condition negated his intent to kill. The defendant argues that because of his drugged condition, he lacked the mental capacity to form the requisite intent to kill. This question was for the jury's determination. (*People v. Jones* (1977), 56 Ill. App. 3d 600, 605, 371 N.E.2d 1150.) The weight to be given the testimony relating to intoxication and inferences to be drawn therefrom also are peculiarly within the province of the trier of fact. (*People v. Gross* (1977), 52 Ill. App. 3d 765, 771, 367 N.E.2d 1028.) The jury resolved these questions adversely to the defendant and its decision will not be disturbed.

## II

### A

■ The defendant next contends that he was denied a fair trial by the court's admission of the testimony of the State's medical expert witness, Dr. Gilbert Bogen, who stated that the defendant was arrested for burglary at the age of 13 and that he was charged with auto theft 20 years prior to trial. This testimony was improper and should not have been admitted. We reject the State's contention that this testimony of the defendant's *arrest* for burglary and *charge* for auto theft was proper because it supported the doctor's diagnosis that defendant had an antisocial personality. We likewise reject the State's contention that defendant failed to properly preserve this issue for review.

Upon the presentation of the complained of testimony, the fol-

lowing occurred:

"[Defense Counsel]: Objection, your Honor, move for a—objection, your Honor. May I have a side-bar?

THE COURT: I'll ask the jurors to excuse for a moment. I'm going to excuse the jury. You may go back to the jury room."

The jury was excused from the courtroom even though the court had not ruled on the objection. Out of the jury's presence, the defense attorney made a motion for a mistrial and argued in support thereof.

Extensive colloquy occurred on the motion between the court, defense counsel and the assistant State's Attorneys. The trial court denied the mistrial motion. Defense counsel did not request the court to rule on his objection in the presence of the jury. Nor did he request the court to instruct the jury to disregard the complained of testimony upon resumption of the proceedings before the jury and the trial court did not do so. The defense attorney was confronted with the dilemma of requesting the court to instruct the jury to disregard the testimony and thereby alert the jury's attention a second time to the complained of testimony, by such a belated admonition from the court. Defense counsel was initially confronted with and resolved this dilemma when he objected to the testimony in the jury's presence and requested a side bar conference.

The defense attorney's decision not to request the trial court to instruct the jury to disregard the testimony presented a dilemma to the trial court strikingly similar to the dilemma with which the defense counsel had been confronted. The choice available to the trial court, after its adverse ruling on defense counsel's side bar mistrial motion, was to instruct the jury to disregard the testimony in the absence of defense counsel's request and possibly contrary to defense counsel's desire. The trial court elected not to do so. We conclude that the trial court did not err in so doing. On the undisputed facts of the shooting in this case, it is highly unlikely that this testimony of remote criminal charges against the defendant influenced the jury in reaching its verdict. *People v. Carlson* (1982), 92 Ill. 2d 440, 442 N.E.2d 504.

## B

■ The defendant further complains of the following direct-examination of Dr. Bogen:

"Q. Does the fact that the defendant told you that Rosie was his girl friend and then denied that on the witness stand, what does that tell you?

A. That tells me that the patient's credibility must be questioned in terms of his statements."

The question and answer were improper and should not have been presented to the jury. The trial court properly sustained the defendant's objection to it and admonished the jury to disregard it. The prejudice, if any, to the defendant was thereby erased.

## C

■ Defendant next urges for reversal that he was irreparably prejudiced by the arresting officer's testimony that he advised the defendant of his *Miranda* rights when he arrested the defendant. Complaint is made of the following testimony by the officer given under direct examination by the State:

"[Officer James Etress]: I went back to the living room and told Michael Brady his Constitutional Rights.

Q. How did you do that?

[Defense Counsel]: Objection, your Honor. There is no issue in this case about anything to do with rights. I object.

THE COURT: Overruled.

Q. How did you do that?

THE WITNESS: I read him his Constitutional Rights from my Federation of Police Handbook.

Q. Are those rights printed for that purpose in your book?

[Defense Counsel]: Objection, Your Honor.

THE COURT: What's the basis?

[Defense Counsel]: Improper to bring that matter into evidence.

THE COURT: Overruled. Proceed.

Q. Are those rights that are printed in the book?

THE WITNESS: Yes, ma'am, they're on page 76 of the book. Would you like to see the book?

[Assistant State's Attorney]: No, thank you, officer, that won't be necessary."

The officer further testified that he read defendant his *Miranda* rights and told defendant he was under arrest. There was no testimony that the defendant said anything after he was read his rights.

We do not accept the State's contention that the officer's testimony was proper because there was no indication that defendant exercised his right to remain silent after he was informed of his *Miranda* rights.

Nor do we accept the State's contention that this testimony was proper and admissible because *Miranda* warnings are constitutionally

necessary. *Miranda* warnings are constitutionally necessary, but as defendant aptly pointed out in his objection to this testimony, an officer's testimony that he gave *Miranda* warnings to a defendant is irrelevant when the defendant did not make a statement or when the State is not seeking to introduce a defendant's statement into evidence. (*Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240; *United States v. Hale* (1975), 422 U.S. 171, 45 L. Ed. 2d 99, 95 S. Ct. 2133; *Miranda v. Arizona* (1966), 384 U.S. 436, 468 n.37, 16 L. Ed. 2d 694, 720 n.37, 86 S. Ct. 1602, 1624 n.37.) Here, apparently the defendant did not make a statement to the arresting officer and the State was not seeking to introduce the defendant's statement into evidence. Consequently, testimony that the defendant was given his *Miranda* warnings was irrelevant and improper.

■ Defendant persuasively argues that the jury was left to speculate that he remained silent, from which the jury might have drawn an impermissible inference. Conversely, the jury might not have so speculated or inferred. The jury might have conjectured that the defendant made an exculpatory statement which the State chose not to introduce as evidence. Testimony of *Miranda* warnings, under the circumstances here, permits such unneeded and undesired uncertainties. But under the facts of this case, where the defendant testified that he shot and killed Wellner, the improper testimony that he was given his *Miranda* warnings was harmless. *People v. Jackson* (1974), 23 Ill. App. 3d 945, 320 N.E.2d 591.

### III

■ The defendant additionally argues that Officer James Etress' volunteered testimony on cross-examination created prejudicial inferences against him and denied him a fair trial. The complained of testimony was as set forth below:

"[Defense counsel]: Give me the names of one of the persons whom you arrested and charged with possession of PCP.

A. Kuckla, K-U-C-K-L-A, I believe.

Q. Do you recall his or her first name?

A. Oh, there was two Kucklas, two brothers. I don't remember their names. *I believe Mr. Brady [defendant] would know their names.*" (Emphasis added.)

We do not accept the State's contention that this gratuitous comment was a proper response to questioning by defense counsel. The comment was improper but harmless since defense counsel's objection to the remark was promptly sustained and the jury was directed to disregard it. Moreover, it was the defendant who first injected his drug

usage into the case. He freely admitted his drug purchases and usage. Indeed, the defendant's defense was based on his drug usage. The defendant was not prejudiced by the officer's improper unsolicited comment that the defendant would know the names of persons who had been arrested and charged with the possession of drugs.

## IV

■ Defendant further asserts for reversal that the assistant State's Attorney's closing argument inferred that the defendant sold narcotics. Defendant testified that he earned over $500 per week from his employment and that during one week he spent at least $450 for drugs, which he purchased from Wellner. From this evidence, it appears that the assistant State's Attorney, in his argument to the jury, questioned whether the defendant could pay that amount of money for drugs from his salary. Defendant asserts that this argument was improper because it inferred that defendant was engaged in the nefarious business of selling drugs.

In the factual context of this case, defendant's argument is without merit. The defendant testified about his current and prolonged history of extensive drug use and that he was under the influence of drugs and therefore lacked the mental capacity to form the requisite intent to kill when he shot Wellner. The assistant State's Attorney's argument therefore could not have improperly prejudiced him. Moreover, it is proper for the State to comment on legitimate inferences drawn from the trial evidence. *People v. Wallace* (1981), 100 Ill. App. 3d 424, 432, 426 N.E.2d 1017.

## V

■ The defendant additionally posits that he acted recklessly when he shot Wellner and therefore, he contends, the evidence supported a manslaughter instruction. This contention is without merit. Section 4—6 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 4—6) defines recklessness as follows:

"A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. An act performed recklessly is performed wantonly, within the meaning of a statute using the latter term, unless the statute clearly requires another meaning."

It was held in *People v. Simpson* (1978), 74 Ill. 2d 497, 384 N.E.2d 373, *People v. Cannon* (1971), 49 Ill. 2d 162, 273 N.E.2d 829, *People v. Frank* (1981), 98 Ill. App. 3d 388, 424 N.E.2d 799, and *People v. Hanrahan* (1978), 64 Ill. App. 3d 207, 380 N.E.2d 1075, that when a defendant acts intentionally, he does not act recklessly. The testimony in this case clearly established that the defendant intentionally shot Wellner in the back of the head. Recklessness has been determined to be the mental state of a defendant in instances where death resulted from the defendant's inadvertent negligence, carelessness or accident. Recklessness has not been determined to be the mental state of a defendant whose deliberate act intentionally killed the victim. (Ill. Rev. Stat. 1981, ch. 38, pars. 4—4 and 4—6; *People v. Hoffer* (1985), 106 Ill. 2d 186, 194-95, 478 N.E.2d 335.) Not one scintilla of evidence of recklessness by the defendant was presented in this case, and the jury, on the facts presented and within its province, appropriately found the defendant guilty of murder.

## VI

The defendant's contention that the trial court erred in refusing to instruct the jury on the elements of involuntary manslaughter is also without merit. Involuntary manslaughter is defined in section 9—3(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 9—3(a)) as follows:

"A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly, except in cases which the cause of the death consists of the driving of a motor vehicle, in which case the person commits reckless homicide."

The offenses of murder and involuntary manslaughter are clearly distinguishable. Murder requires the specific intent to kill or to do great bodily harm, or knowledge by the defendant that his act created a strong probability of death or great bodily harm. (Ill. Rev. Stat. 1981, ch. 38, par. 9—1.) In involuntary manslaughter, there is an absence of an intent to kill. It is the defendant's reckless conduct which causes the unintentional death in involuntary manslaughter. Ill. Rev. Stat. 1981, ch. 38, par. 9—3(a).

In the instant case, the undisputed testimony was that the defendant stood behind Wellner, pointed a gun and fired a bullet into the back of Wellner's head. This testimony clearly established that the defendant intentionally shot Wellner, intended to kill him, and that

the defendant's shooting was not reckless. There was also no evidence that the defendant's conduct was reckless. We do not accept the defendant's argument that because he lacked the mental capacity to form the requisite intent to kill, the trial court erred in refusing to instruct the jury on the elements of involuntary manslaughter. We find that there was no evidence on which to predicate an involuntary manslaughter instruction. *People v. Lockett* (1980), 82 Ill. 2d 546, 413 N.E.2d 378; *People v. Simpson* (1978), 74 Ill. 2d 497, 384 N.E.2d 373; *People v. Frank* (1981), 98 Ill. App. 3d 388, 424 N.E.2d 799.

## VII

■ As a further basis for reversal, the defendant asserts that the court erred in its insanity instructions to the jury. The defendant's defense to the shooting was his mental state. Defense witness Dr. John Adams, a psychiatrist, testified about the defendant's mental state at the time of the shooting. Another psychiatrist, Dr. Gilbert Bogen, a State's witness, testified that the defendant was not suffering from mental illness when he shot Wellner.

The statute on which the insanity instructions were based is section 6—2 of the criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, pars. 6—2(a) through (d)), which states:

"(a) A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

(b) The terms 'mental disease or mental defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.

(c) A person who, at the time of the commission of a criminal offense, was not insane but was suffering from a mental illness, is not relieved of criminal responsibility for his conduct and may be found guilty but mentally ill.

(d) For purposes of this Section, 'mental illness' or 'mentally ill' means a substantial disorder of thought, mood or behavior which afflicted a person at the time of the commission of the offense and which impaired that person's judgment, but not to the extent that he is unable to appreciate the wrongfulness of his behavior or is unable to conform his conduct to the requirements of law."

The trial court instructed the jury that to sustain the charge of murder, the State must prove beyond a reasonable doubt that the

defendant was capable of acting knowingly or intentionally and was sane at the time of the offense. The court gave the jury the defendant's instruction that a drugged person is criminally responsible for his conduct unless his drugged condition renders him incapable of acting knowingly. The court also instructed the jury that a person is insane and not criminally·responsible for his conduct if, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. The trial court additionally gave the jury the two following instructions (see Ill. Rev. Stat. 1981, ch. 38, pars. 6—2(c) and (d), which were tendered by the State:

> "A person who at the time of the commission of a offense, was not insane but was suffering from a mental illness, is not relieved of criminal responsibility for his conduct and may be found guilty but mentally ill.
>
> \*\*\* '[M]ental illness' \*\*\* means a substantial disorder of thought, mood, or behavior which afflicted a person at the time of the commission of the offense which impaired that person's judgment, but not to the extent that he is unable to appreciate the wrongfulness of his behavior or is unable to conform his conduct to the requirements of law."

The jury was given alternate verdict forms of not guilty of murder, guilty of murder, not guilty of murder by reason of insanity and guilty of murder but mentally ill. Defendant argues that these instructions and verdict forms violated his right to due process because they required the jurors to make an "impossible distinction" between mental illness and mental disease. Defendant contends that these terms are not susceptible to precise definition. Defendant argues further that section 6—2 violates his constitutional right to equal protection because it fails to include a class of persons within which he falls, that is, persons suffering from mental illness whose judgment is so impaired that they are unable to appreciate the criminality of their conduct and unable to conform their conduct to the requirements of the law.

Because the defendant put his mental state into issue as his defense, it was proper for the trial court to instruct the jury as it did. The given instructions were based on correct legal principles and were applicable to the trial evidence. *People v. Dordies* (1978), 60 Ill. App. 3d 621, 625, 377 N.E.2d 245.

The insanity instructions did not violate defendant's due process rights. Contrary to the defendant's assertions, the jury was not required to distinguish between the "undistinguishable terminology of

mental disease and mental illness." Rather, the jury was required to simply differentiate between (1) a *mental disease* which causes a defendant to lack substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law, and (2) a *mental illness* which impairs a person's judgment, but not to the extent that he is unable to appreciate the wrongfulness of his behavior or is unable to conform his conduct to the requirements of the law. (Ill. Rev. Stat. 1981, ch. 38, pars. 6—2(a) and (d).) Section 6—2(c) of the statute provides that a person who was not insane but suffering from a mental illness is not relieved of criminal responsibility for his conduct and may be found guilty but mentally ill.

The jury in the case before us determined the statutory differences between mental disease and mental illness. It determined that the defendant was guilty of murder and thus sane. The jury rejected the verdicts that the defendant was guilty, but mentally ill, and that the defendant was not guilty by reason of insanity. The jury did not conclude that the defendant was suffering from a mental disease or mental illness. The facts amply support their conclusions. The defendant's due process argument must fail. *United States v. Bass* (1971), 404 U.S. 336, 30 L. Ed. 2d 488, 92 S. Ct. 515; *Bouie v. City of Columbia* (1964), 378 U.S. 347, 12 L. Ed. 2d 894, 84 S. Ct. 1697; *United States v. LaBrecque* (D.N.J. 1976), 419 F. Supp. 430; *People v. Clark* (1981), 102 Ill. App. 3d 414, 423-25, 429 N.E.2d 1255.

██ The defendant's argument that the foregoing statute and insanity instructions denied him equal protection under the law must also fail. Section 6—2(a) absolves a person of criminal responsibility when his mental disease causes him to lack substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. Sections 6—2(c) and (d) provide that a person is not relieved of criminal responsibility if the person's mental illness impairs that person's judgment, but not to the extent that he is unable to conform his conduct to the requirements of law. These statutory classifications are rational and withstand an equal protection challenge. *People v. Gamble* (1983), 117 Ill. App. 3d 543, 453 N.E.2d 839.

For the reasons stated, the judgment of conviction is affirmed.

Affirmed.

LORENZ and SULLIVAN, JJ., concur.