UNITED STATES of America ex rel. Edward THIRSTON, Petitioner,

v.

Jerry D. GILMORE, James E. Ryan,[1] Respondents.

No. 96 C 5076.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 18, 1997.

---

1. Attorney General Ryan is improperly named in this action. Under Rules 2(a) and 2(b) of the Rules Governing Section 2254 Cases in the United States District Courts, when a petitioner is currently in custody, the petition for habeas corpus relief should only name the state officer having custody of the petitioner. Only when the petitioner may be subject to future custody should the petition name as respondent both the state officer who presently has custody over the applicant and the state attorney general. See RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS, Rule 2(a) & (b); *see also Hogan v. Hanks*, 97 F.3d 189, 190 (7th Cir.1996) (citing Cruz v. Warden of Dwight Correctional Center, *907 F.2d 665, 665 n. 1 (7th Cir.1990). As Thirston is now in state custody, Attorney General Ryan is not a proper party.*

492

Edward Thirston, Joliet, IL, pro se.

Robert K. Villa, Illinois Attorney General's Office, Chicago, IL, Arleen C. Anderson, Illinois Attorney General's Office, Criminal Appeals Div., Chicago, IL, for Jerry D. Gilmore and Jim Ryan.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

■ Following a bench trial, Petitioner Edward Thirston was convicted of first de-

gree murder and sentenced to an extended term of 70 years' imprisonment. Thirston pursued state appellate and post conviction remedies without success, and now petitions this Court for a writ of habeas corpus under the newly amended 28 U.S.C. § 2254.[2] Thirston raises four issues in his pro se petition: 1) ineffective assistance of trial counsel; 2) ineffective assistance of appellate counsel; 3) insufficiency of the evidence; and 4) constitutionally excessive sentence. After careful review, we deny Thirston's petition.

## RELEVANT FACTS

When considering a habeas corpus petition, the Court presumes that the factual determinations of the state court are correct. 28 U.S.C. § 2254(e)(1). Accordingly, we adopt the facts as set forth by the Illinois Appellate Court. See People v. Thirston, No. 86–0669, 167 Ill.App.3d 1166, 131 Ill.Dec. 545, 538 N.E.2d 920 (Ill.App.Ct. Mar. 9, 1988).

Thirston was found guilty of fatally beating Keith Jones, the 22–month old son of Vernidette Jones, Thirston's live-in girlfriend. The following evidence was presented at trial. Thirston and Vernidette shared an apartment with Vernidette's three sons, Thirston's cousin, David Butler, and Butler's girlfriend, Lisa Brumfield.[3] On the evening of July 15, 1985, Keith Jones, who wasn't wearing a diaper, defecated on himself and the bedroom floor. Vernidette testified that Thirston became enraged. Thirston picked up the infant by the collar and beat him with his fists. According to Vernidette, she, Lisa Brumfield, and David Butler tried to stop Thirston, but he continued, cursing the child as he hit him another 20 times with a buckled leather belt. Apparently unsatisfied that Keith had learned his lesson, Thirston began

2. Thirston filed this petition on August 19, 1996, nearly four months after Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104–132, 110 Stat. 1214. Under the Act's amendments to 28 U.S.C. § 2254(d), a state court's application of federal constitutional law is reviewed only for reasonableness. See Lindh v. Murphy, 96 F.3d 856, 879 (7th Cir. 1996), rev'd on other grounds, —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); Spreitzer v. Peters, 114 F.3d 1435, 1441–42 (7th Cir.1997). The amendments apply to petitions (such as Thir-

ston's) that were filed after the date of enactment. Lindh, —— U.S. at ——, 117 S.Ct. at 2063–64.

3. The Illinois Appellate Court determined that while David Butler's live-in girlfriend was referred to by a variety of names, the court would refer to her as Lisa Brumfield. People v. Thirston, No. 91–1141, 232 Ill.App.3d 1107, 208 Ill. Dec. 752, 650 N.E.2d 23 (Ill.App.Ct. Aug. 7, 1992).

stomping on the child. Finally, Lisa Brumfield called for an ambulance. Vernidette accompanied her son to the hospital where he was pronounced dead. A review of the coroner's report revealed that the infant's injuries were consistent with Vernidette's description of the incident. On cross-examination, Vernidette claimed she was unaware whether Thirston had used drugs, but noticed that he smelled of alcohol the day of the incident.

Gregory Morris, the paramedic responding to the call for help, testified that the infant was not showing any signs of life when Thirston brought Keith down to the ambulance. Morris recalled that Thirston explained that the child merely had the wind knocked out of him. When asked about Thirston's condition, Morris responded that Thirston neither appeared to be under the influence of a controlled substance, nor did he smell of alcohol. Officer Thomas Williams, who saw the ambulance and stopped to help, testified that Thirston admitted pushing the Keith into a door because the child had defecated on the floor. Also testifying was Detective Utter, who spoke with Thirston at the hospital and then later at Chicago's Area I headquarters. Utter stated that Thirston was sober and coherent. At the police station, Thirston gave a court-reported statement in the presence of an assistant state's attorney in which he confessed to striking Keith hard on at least five occasions and shoving the child into a door to punish him for his behavior.

Thirston's trial testimony conflicted with the statement he gave to police. On direct examination, Thirston claimed that he struck Keith only once, causing the victim to fall into the door, and then left the apartment for almost an hour. Thirston denied having any intention to kill the child, stating that he was under the influence of drugs and alcohol at the time of the assault. Thirston testified that when he returned to the apartment he found Keith in bed. Distressed by the infant's condition, Thirston woke Lisa Brumfield and asked her to call an ambulance.

Thirston further challenged Vernidette's version of the events, stating that only Vernidette and her three children were present at the time of the incident. Accordingly to

Thirston, Lisa Brumfield wasn't in the room, and David Butler was out of the apartment entirely. Neither Lisa Brumfield nor David Butler were called to testify. On cross-examination, Thirston changed his testimony once again, admitting that he struck the victim three or four times.

The court determined that Thirston was guilty of first degree murder. The court considered the manslaughter alternative, but found no mitigating factors that would warrant the lesser degree of homicide. At the sentencing hearing, the State presented the testimony of Thirston's sister, Ella Reynolds, and her common law husband, Willie Peoples. Reynolds and Peoples testified that Thirston and Vernidette physically disciplined their children. Reynolds further admitted that when Thirston spanked and whipped the children, he often used a belt. The State then offered evidence of Thirston's prior criminal history, including numerous adult convictions for robbery and theft.

In mitigation, the defense told of Thirston's troubled youth and his drug and alcohol problems. Defense counsel requested that the court consider Thirston's rehabilitative potential, noting that Thirston's prior convictions were primarily for non-violent offenses, and that his violent behavior was limited to altercations with those close to him. While Thirston was given the opportunity to address the court, he declined to do so.

After hearing the factors in aggravation and mitigation, the court determined that although the operative factors necessary to impose a death sentence were present, sufficient mitigating factors existed to avoid that disposition. The court then turned its attention to the statutorily designated sentencing factors. The judge observed that the adult Petitioner had beaten the infant in an exceptionally brutal and heinous manner. The court considered the need to protect others from Thirston's outrage, took note of his age and background, and sentenced Thirston to an extended term of 70 years imprisonment.

## PROCEEDINGS ON DIRECT APPEAL

On direct appeal, Thirston argued only that the sentence imposed upon him was

excessive given the presence of certain mitigating factors. In support of his contention that he deserved a lesser sentence, Thirston specifically cited his heroin addiction, the indication in the record that he was under the influence of drugs at the time of incident, his own testimony disavowing any intent to kill the child, and that he was the one who summoned for help, as factors in mitigation.

The appellate court was unmoved by Thirston's showing and affirmed his sentence. Upon review, the court noted the broad discretion afforded to sentencing courts in Illinois. *See People v. LaPointe*, 88 Ill.2d 482, 59 Ill.Dec. 59, 431 N.E.2d 344 (1981). The court explained that the trial court was justified in imposing the extended term of imprisonment because Thirston was over the age of seventeen and the victim was under the age of twelve, and because the offense was accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty. Ill.Rev.Stat.1983, ch. 38, par. 1005–5–3.2(b)(2) and (b)(3)(i). Accordingly, in the absence of evidence that the penalty constituted a substantial departure from the spirit and purpose of Illinois law, the appellate court refused to disrupt Thirston's sentence. *People v. Thirston*, No. 86–0669, slip op. at 6–7, 167 Ill App.3d 1166, 131 Ill.Dec. 545, 538 N.E.2d 920 (Ill.App.Ct. Mar.9, 1988).

In this regard, Thirston claimed that the imposition of such a lengthy sentence upon a man his age, 34, was the functional equivalent of a death sentence. Such an extensive incarceration, Thirston argued, defeated the Illinois Constitution's goal of rehabilitation. The appellate court rejected Thirston's contention that the trial court failed to give adequate consideration to his potential for rehabilitation. The record demonstrated that the trial court properly balanced the brutal nature of the crime against Thirston's rehabilitative potential. The appellate court refused to conclude that the trial court abused its discretion. *See People v. Cabrera*, 116 Ill.2d 474, 108 Ill.Dec. 397, 508 N.E.2d 708 (1987).

Thirston petitioned the Illinois Supreme Court for leave to appeal the appellate court's ruling, arguing that the appellate court erred in finding that his sentence of 70 years was not excessive. The Supreme Court summarily denied the petition.

## STATE POST CONVICTION PROCEEDINGS

Thirston's next move was to submit a petition for post conviction relief to the trial court. The petition set forth Thirston's contention that he was denied effective assistance of both trial and appellate counsel under the Fifth Amendment. Thirston argued that his trial counsel's representation was constitutionally deficient because she failed to present the testimony of four critical witnesses: Lisa Brumfield, David Butler, Ella Reynolds, and Willie Peoples. Thirston contended that, if called to testify, Lisa Brumfield and David Butler would contradict Vernidette's testimony that Thirston repeatedly beat and kicked the infant. In addition, Thirston claimed that trial counsel should have called Ella Reynolds and Willie Peoples to the stand, noting that both Reynolds and Peoples testified at Thirston's sentencing hearing that Vernidette regularly beat her children. Turning his attention toward appellate counsel, Thirston claimed ineffective assistance of counsel based upon appellate counsel's failure to argue ineffective assistance of trial counsel.

The trial court dismissed Thirston's post conviction petition without a hearing and prior to appointing counsel. Thirston appealed this determination, and the Illinois Appellate Court affirmed, finding that Thirston failed to state a claim under *Strickland v. Washington*. *See Thirston*, No. 1–91–1141, slip op. at 12–13, 167 Ill.App.3d 1166, 131 Ill.Dec. 545, 538 N.E.2d 920. Once again, the Illinois Supreme Court summarily denied Thirston's Petition for Leave to Appeal.

## ANALYSIS

### I. Exhaustion and Procedural Default

#### A. Legal Standards

■ The preliminary step in any habeas corpus proceeding is determining whether the petition has complied with the requirements to exhaust state remedies and to avoid procedurally defaulting the substantive

claims by adequately presenting them to the state courts. *Lostutter v. Peters,* 50 F.3d 392, 394 (7th Cir.) *cert. denied,* — U.S. ——, 116 S.Ct. 130, 133 L.Ed.2d 79 (1995). "Exhaustion is accomplished when claims have been presented to the highest state court for a ruling on the merits, or when the claims could not be brought in state court because no remedies remain available at the time the federal petition is filed." *Farrell v. Lane,* 939 F.2d 409, 410 (7th Cir.1991) (citing *United States ex rel. Simmons v. Gramley,* 915 F.2d 1128, 1132 (7th Cir.1990)); and *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 1570 n. 28, 71 L.Ed.2d 783 (1982). As the Supreme Court noted in *Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 2554–55, 115 L.Ed.2d 640 (1991), the exhaustion requirement is "grounded in principles of comity; in a federal system. the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights."

■ A habeas petitioner's claims are procedurally defaulted when the federal claims were not "fairly presented" to the state courts. *Jones v. Washington,* 15 F.3d 671, 675 (7th Cir.1994); *see also Verdin v. O'Leary,* 972 F.2d 1467, 1474 (7th Cir.1992). Procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson,* 965 F.2d 1453, 1458 (7th Cir.1992). Habeas petitioners may fall into the procedural default trap by failing to pursue all the appeals required under state law in a timely manner, or by neglecting-notwithstanding diligent pursuit of all required appeals-to raise at the state level the federal claims asserted in the habeas petition. *SeeUnited States ex rel. Balderas v. Godinez,* 890 F.Supp. 732, 738 (N.D.Ill.1995). Procedural default also occurs when the state court decision supporting the petitioner's confinement was decided on an adequate and independent state law ground (either substantive or procedural). *See Coleman,* 501 U.S. at 729–732, 111 S.Ct. at 2553–55. As Coleman explained, "[j]ust as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Id.* at 731–32, 111 S.Ct. at 2555. We now examine Thirston's claims to see whether any fall victim to the exhaustion or procedural default doctrines.

**B. Application of Procedural Default to Thirston's Claims**

■ As stated above, Thirston raises claims of ineffective assistance of trial and appellate counsel, insufficiency of the evidence, and an excessive sentence in his petition for habeas relief. The State readily concedes that Thirston's claims of ineffective assistance of trial counsel for failing to call certain witnesses and ineffective assistance of appellate counsel for failing to challenge trial counsel's performance have been fully and fairly presented to the state courts. Despite his efforts on direct appeal and in the post conviction proceedings, however, Thirston raises the claim that trial court erred in finding him guilty of first degree murder, as opposed to manslaughter, for the first time in his petition for habeas relief. Therefore, Thirston's sufficiency of the evidence argument fails to clear the procedural default hurdle. *Lemons v. O'Sullivan,* 54 F.3d 357, 361 (7th Cir.1995).

■ Similarly, Thirston's contention that his sentence of 70 years imprisonment was constitutionally disproportionate to the crime under the Eighth Amendment makes its first appearance in the current proceeding. Neither Thirston's state court filings nor the Illinois court rulings reveal even a hint of Thirston's current Eighth Amendment challenge. While Thirston argued his sentence was excessive, his state court challenges were based solely upon Illinois state law. Merely pleading facts which support a federal claim or setting forth a state law claim which resembles a federal claim is insufficient to alert the Illinois courts to the nature of his federal claim. *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (per curiam).

■ The Seventh Circuit adopted the test fashioned by the Second Circuit in *Daye v. Attorney General of New York* for determining whether a petitioner has fairly presented the federal nature of a claim to the state courts for review:

> If the petitioner's argument to the state court did not: 1) rely on pertinent federal cases employing constitutional analysis; 2) rely on state cases applying constitutional analysis to a similar factual situation; 3) assert the claim in terms so particular as to call to mind a specific constitutional right; or 4) allege a pattern of facts that is well within the mainstream of constitutional litigation, then this court will not consider the state courts to have had a fair opportunity to consider the claim.

*Verdin v. O'Leary,* 972 F.2d 1467, 1474–75 (7th Cir.1992) (quoting *Daye v. Attorney General of New York,* 696 F.2d 186, 194 (2nd Cir.1982) (en banc)). Under *Verdin,* a petitioner fairly presents a claim by submitting both the operative facts and the controlling federal law principles to the state court. 972 F.2d at 1474–75.

■ But a petitioner's reliance upon state caselaw will not necessarily preclude a finding of fair presentment *Verdin,* 972 F.2d at 1475. State caselaw interpreting federal rights may present the most thorough examination of the law pertaining to the habeas claim. *Id.* "However, when the cited cases articulate only state law principles and available federal precedent has been omitted" the petitioner has failed to alert the state court to the federal nature of his claim. *Id.; see also Bocian v. Godinez,* 101 F.3d 465, 469 (7th Cir.1996) (finding that while the *Verdin* test does not require specific citation to constitutional provisions, the petitioner must still set forth the nature of the constitutional claim with particularity).

In his direct appeal and in his Petition for Leave to Appeal to the Illinois Supreme Court ("PLA"), Thirston argued that the trial court abused its discretion in sentencing him, claiming that the lengthy incarceration violated the Illinois Constitution's objective of restoring criminals to useful citizenship. PLA at p. 7. Despite the plethora of federal caselaw addressing the constitutionality of allegedly disproportionate sentences under the Eight Amendment,[4] Thirston relied only upon Illinois caselaw interpreting Illinois statutes in the state proceedings. *Id.*[5] Thirston neither utilized particular constitutional terms nor alleged a pattern of facts well within the mainstream of constitutional litigation. Thirston denied the state courts the opportunity to address and perhaps remedy the alleged constitutional deficiencies in the state court proceedings. Unless Thirston can demonstrate cause for and prejudice from his procedural default, his failure to raise the sufficiency of the evidence and Eighth Amendment claims below bars our review of his petition. *Lemons v. O'Sullivan,* 54 F.3d 357, 361 (7th Cir.1995).

■ Thirston attempts to lay the blame for these procedural oversights on appellate counsel's alleged constitutionally deficient representation. Despite the fact that Thirston argues ineffective assistance of trial and appellate counsel, such claims cannot suffice as "cause" because he never contended that the attorneys' failure to raise these two claims was the basis of their objectively unreasonable performance. "Before a state prisoner can use ineffective assistance of counsel as cause for procedural default, he must first present this claim as an independent claim to the state courts." *Lemons v. O'Sullivan,* 54 F.3d 357, 360 (7th Cir.1995). "It is not sufficient that [petitioner] alleged various other errors by counsel; to set forth a claim of ineffective assistance of counsel, a petitioner 'must identify the specific acts or omissions of counsel that form the basis of his claim of ineffective assistance.'" *Momient–El v. DeTella,* 118 F.3d 535, 541 (7th Cir.1997) (quoting *Dugan v. United States,* 18 F.3d 460, 464 (7th Cir.1994)). Conse-

---

4. *See, e.g., Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991); *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); *Gleason v. Welborn,* 42 F.3d 1107, 1112 (7th Cir.1994) *cert. denied,* 514 U.S. 1109, 115 S.Ct. 1961, 131 L.Ed.2d 852 (1995).

5. Thirston cited cases such as *People v. Matthews,* 126 Ill.App.3d 710, 81 Ill.Dec. 874, 467 N.E.2d 996 (1984); and *People v. Cox,* 113 Ill.App.3d 136, 68 Ill.Dec. 883, 446 N.E.2d 1280 (1983), purely state law cases, in support of his claim of an excessive sentence.

quently, by waiting until the habeas stage to argue a claim of ineffective assistance of appellate counsel for failure to raise a sufficiency of the evidence claim and an Eighth Amendment challenge, Thirston is barred from asserting appellate counsel's deficiencies as cause.

    Our analysis of Thirston's cause argument also reveals that two of Thirston's ineffective assistance of appellate counsel arguments have been procedurally defaulted as well. Thirston's failure to raise appellate counsel's decision to forgo sufficiency of the evidence and Eighth Amendment challenges prior to habeas prevents us from addressing such claims here. *DeTella*, 118 F.3d at 541. Moreover, while Thirston alleges cause for and prejudice from his failure to present these claims in the appropriate state forum, he neglects to explain what the cause was, or what prejudice resulted. Specifically, Thirston states that he "alleges cause and prejudice to excuse any default," and nothing more. P.'s Reply at ¶ 1. These purely conclusory assertions are insufficient to satisfy the cause and prejudice exception to the doctrine of procedural default. *Cunningham v. Estelle*, 536 F.2d 82, 83 (5th Cir.1976). Accordingly, Thirston is not only barred from arguing ineffective assistance of appellate counsel for failing to raise these two arguments as cause under the procedural default test, he's failed to provide this Court with the substance to review these claims as well.

    Even if Thirston articulated sufficient cause to excuse his procedural default, he cannot establish prejudice. is "not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 1595, 71 L.Ed.2d 816 (1982). Thirston's ability to satisfy the prejudice prong of the procedural default test depends upon whether appellate counsel would have succeeded had he raised the sufficiency of the evidence and the Eighth Amendment argu-

ments. Because we find that both claims would have failed on their merits, Thirston cannot, even if he attempted to do so, show the requisite prejudice.

    In his sufficiency of the evidence argument, Thirston contends that because he was under the influence of heroin and alcohol at the time of the assault, he did not have the requisite intent to commit first degree murder and at most he could be found guilty of second degree murder.[6] In evaluating Thirston's claim, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of [first degree murder] beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 320, 99 S.Ct. 2781, 2789–90, 61 L.Ed.2d 560 (1979). As a reviewing court, we are prohibited from reweighing the evidence or reassessing the credibility of the witnesses. *Kines v. Godinez*, 7 F.3d 674, 678 (7th Cir.1993) *cert. denied*, 510 U.S. 1200, 114 S.Ct. 1314, 127 L.Ed.2d 664 (1994).

    To establish first degree murder under Illinois law, the prosecution must prove beyond a reasonable doubt that the defendant: 1) intended to kill or cause great bodily harm, or knew that his acts would cause death; or 2) knew that his acts created a strong probability of death or great bodily harm; or 3) was attempting or committing a forcible felony other than second degree murder. 720 ILCS 5/9–1(a). "The intent required for murder may be implied by a showing that the accused voluntarily and willfully committed an act, the direct and natural tendency of which was to destroy another's life." *United State ex rel. Johnson v. Page*, 1995 WL 430942, at *4 (N.D.Ill. July 18, 1995) The determination of whether a defendant, allegedly under the influence of drugs or alcohol, lacked the mental capacity to form the requisite intent to commit murder is a determination for the trier of fact. *People v. Brady*, 138 Ill.App.3d 238, 243, 92

---

**6.** Thirston also submits a newspaper article that he argues demonstrates that the same judge had found another defendant charged with virtually the same crime guilty of manslaughter. We find that the crime described in the article differed in

the degree of brutality, and that such a consideration is wholly irrelevant to our determination of whether Thirston was proven guilty of first degree murder beyond a reasonable doubt.

Ill.Dec. 916, 920, 485 N.E.2d 1159, 1163 (1st Dist.1985).

In the instant case, the victim's mother described in detail how Thirston brutally beat the infant despite others' pleas to stop. Her testimony was consistent with the coroner's report of how the injuries were inflicted. Thirston admitted both in his statement to police and in court that he struck the child with force to teach him a lesson. Furthermore, Thirston's argument that he was too intoxicated from indulgences earlier in the day to form the requisite intent to commit murder was contradicted by the testimony of paramedic at the scene and the arresting officer. Both had conversations with Thirston shortly after the incident occurred and testified that Thirston was coherent and sober. In light of such evidence, we cannot say that no reasonable trier of fact could have found that Thirston knowingly and "willfully committed an act, the direct and natural tendency of which was [murder]". *Page*, 1995 WL 430942 at *4.

■ Moreover, Thirston's Eighth Amendment challenge to his sentence as excessive and disproportionate to the crime charged is highly dubious in light of the Supreme Court's decision in *Harmelin v. Michigan*, 501 U.S. 957, 994, 111 S.Ct. 2680, 2701, 115 L.Ed.2d 836 (1991)(finding that proportionality review of sentences is reserved for death penalty jurisprudence). Thirston claims that an application of the Supreme Court's formula announced in *Solem v. Helm*, 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), reveals that his sentence is unconstitutional, particularly in light of lesser sentences received by others similarly situated. However, the *Harmelin* Court rejected *Solem*, finding that it was "scarcely the expression of clear and well accepted constitutional law" and was "simply

wrong." *Harmelin*, 501 U.S. at 965, 111 S.Ct. at 2686.

■ In the case at bar, Thirston was convicted of brutally murdering an infant in his charge. Under the extended sentencing statute applicable at the time, the court could have sentenced Thirston from 40 years to 80 years imprisonment. *See* Ill.Rev.Stat.1983, ch. 38, par. 1005–3–2(a)(1) and (b)(2). There is no evidence that the trial court relied upon any improper factors in imposing sentence. *See United States v. Simpson*, 8 F.3d 546, 549 (7th Cir.1993). Furthermore, a review of both habeas and state caselaw reveals that lengthy sentences for brutal murders are appropriate. *See, e.g., People v. Cabrera*, 116 Ill.2d 474, 108 Ill.Dec. 397, 508 N.E.2d 708 (1987) (affirming a 60 year murder sentence); *United States v. Welborn*, 1993 WL 385136 (N.D.Ill. Sept. 27, 1993). Accordingly, we find that Thirston's sentence, well within the limits set by law, is not grounds for habeas relief *Walls v. DeTella*, 1997 WL 534287, at *3 n. 2 (N.D.Ill. Aug. 19, 1997) ("when a sentence is within the limits set by law, its severity is not grounds for habeas relief.").[7]

Having determined that Thirston's preceding claims are lacking in merit, we find that Thirston cannot establish that he was prejudiced by appellate counsel's failure to raise them on direct appeal. *See Walls*, 1997 WL 534287, at *5. Because we find that Thirston is not entitled to review of these claims, we turn to Thirston's remaining ineffective assistance of counsel arguments.

## II. DECISION ON THE MERITS

### A. Standard of Review

■ The standard governing our review of Thirston's remaining claims is strict. Under the recently amended habeas corpus statute, federal courts must deny a petition for habeas relief with respect to any claim

---

7. In purely conclusory terms, Thirston contends that our refusal to address these arguments would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750, 111 S.Ct. at 2564–65. This Court is empowered under what has come to be known as the fundamental miscarriage of justice exception to grant a writ of habeas corpus in those extraordinary cases where constitutional violations have resulted in

the conviction of an innocent person. *Lemons*, 54 F.3d at 361 n. 3 (7th Cir.1995) (quoting *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649–50, 91 L.Ed.2d 397 (1986)). After addressing the merits of Thirston's contentions (in spite of his procedural defaults) we do not believe that this case falls within the narrow exception spoken of in *Murray*.

adjudicated on the merits in a state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Under the amended statute, federal courts must accord "greater deference to the determinations made by state courts than they were required to under the previous law." *Spreitzer v. Peters*, 114 F.3d 1435, 1441 (7th Cir.1997) (internal quotations and citations omitted). The standard of review for mixed constitutional questions of law and fact is whether the state court's application of clearly established Supreme Court law was reasonable. *Id.* A state court has reasonably applied clearly established Supreme Court caselaw if its application is "at least minimally consistent with the facts and circumstances of the case." *Id.* at 1442. Put another way, "[t]he statutory 'unreasonableness' standard allows the state court's conclusion to stand if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748–49 (7th Cir.1997).

### B. Review for Reasonableness

We need only address the merits of Thirston's ineffective assistance of counsel claims. The seminal case for assessing claims of ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To state a valid claim under *Strickland*, Thirston must show both: 1) that his counsel's performance was objectively unreasonable; and 2) but for his attorney's deficient representation, the outcome would have been different. *Id.* at 687–88, 104 S.Ct. at 2064–65. There exists a strong presumption that a criminal defendant's counsel rendered assistance that fell within an objective standard of reasonableness. *Kubat v. Thieret*, 867 F.2d 351, 359 (7th Cir.1989).

■■■ Thirston asserts that his trial counsel was ineffective because she failed to call David Butler, Lisa Brumfield, Ella Reynolds, and Willie Peoples to testify in his defense. According to Thirston, Butler and Brumfield would have "corroborated the Petitioner's testimony that he did not severely beat the child ... but did, as testified to, discipline the child." Hab Pet. at p. 5A. However, Thirston's own statements belie his assertion that Butler and Brumfield could have offered such testimony. According to Thirston, neither Butler nor Brumfield were present during the incident.

■■■ Thirston then argues that trial counsel should have called Ella Reynolds and Willie Peoples to the stand, claiming that these potential witnesses would have cast a shadow of doubt in the jury's mind as to the identity of the killer. Thirston correctly notes that, at his sentencing hearing, both Reynolds and Peoples testified that Vernidette Jones had physically disciplined her children in the past. However, Reynolds and Peoples further testified that Thirston physically assaulted their children. Given the potentially damaging testimony, we find that passing on these potential witnesses was a matter of sound trial strategy. *See Serfling v. United States*, 958 F.Supp. 389, 392 (N.D.Ill.1997) ("quibbles with trial strategy can not, as a matter of law, form the basis of such a claim.").

■■■ In addition to these deficiencies, Thirston's presentation of these four potential witnesses' testimony is pure speculation, as he has failed to attach affidavits outlining the substance of their testimony as required by the Seventh Circuit. *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir.1996). Such an oversight is fatal to Thirston's claim because the Seventh Circuit has been unyielding in requiring a "specific, affirmative showing as to what the missing evidence or testimony would have been." *United States ex rel. Partee v. Lane*, 926 F.2d 694, 701 (7th Cir.1991). Absent a showing of the potential witnesses' specific testimony, and that such testimony would have affected the outcome of the trial, we reject Thirston's claim that he was denied ineffective assistance of trial counsel.

■■■ Such a result does not bode well for Thirston's contention that appellate counsel was ineffective for failing to present the preceding argument on direct appeal. We note that defense counsel is not required to raise every conceivable argument on appeal

*Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 3312–13, 77 L.Ed.2d 987 (1983). Appellate counsel is afforded broad discretion in eliminating weaker arguments to emphasize the importance of more meritorious claims. *Id.* Moreover, having determined that Thirston's ineffective assistance of trial counsel argument was utterly lacking in merit, we find it would be impossible for Thirston to establish that appellate counsel's omission was prejudicial. *See Walls v. DeTella,* 1997 WL 534287, at *5 (N.D.Ill. Aug. 19, 1997) (stating that the court need not evaluate the "objective reasonableness" prong under *Strickland* where it is apparent that the petitioner cannot establish prejudice.) Because the appellate court's determination of Thirston's ineffective assistance of counsel claims was not the product of an unreasonable application of Supreme Court caselaw, we must deny his petition for habeas corpus.

## CONCLUSION

After careful consideration, this Court finds that neither Thirston's conviction nor his sentence violated the Constitution in any manner cognizable under the newly amended habeas corpus statute. Furthermore, Thirston was provided with objectively reasonable representation throughout the state court proceedings. Accordingly, Thirston's petition for habeas relief is denied and this action is dismissed.